Michael **KUBIN**, Plaintiff,

v.

**Larry M. MILLER, Corinthian Media, Inc., Broadcast Buying Services, Inc. and Ari Trading, Inc., Defendants.**

**No. 92 Civ. 0756 (SWK).**

United States District Court, S.D. New York.

July 31, 1992.

1102

1104

David G. Trachtenberg by David G. Trachtenberg, New York City, for plaintiff.

Parker Chapin Flattau & Klimpl by Joel A. Chernov, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this diversity action involving claims of fraud, conversion, breach of contract, and breach of fiduciary duty, defendants move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for lack of subject matter jurisdiction. In the alternative, defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to state a claim upon which relief can be granted. Plaintiff Michael Kubin ("Kubin") opposes the motions and cross-moves for an order disqualifying defendants' counsel, Parker Chapin Flattau & Klimpl ("Parker Chapin"). Kubin also cross-moves, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against defendant Larry Miller ("Miller") for filing a false affidavit. Defendants oppose the motions. For the reasons set forth below, defendants' motion, pursuant to Rule 12(b)(1), is denied. Kubin's cross-motion, pursuant to Rule 11, for sanctions against Miller, is denied. Kubin's cross-motion for the disqualification of Parker Chapin is denied. Defendants' motion, pursuant to Rule 12(b)(6), is granted in part and denied in part.

## BACKGROUND [1]

Plaintiff Kubin, a Connecticut domiciliary, entered into an oral agreement with defendant Miller and Robert Ingram ("Ingram") in late 1987 ("late 1987 oral agreement") [2] in which the parties agreed to merge their media businesses, Corinthian

---

1. The background facts are taken from the complaint and, for purposes of this motion, are taken as true. *See Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991) (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)).

2. Kubin refers to this oral agreement as the agreement "reached on or about January 1, 1988." Complaint, at ¶ 46.

Media Buying, Inc. ("CMBI"), Corinthian Advertising, Inc. ("CAI"), defendant Corinthian Media, Inc. ("CMI"), and defendant Broadcast Buying Services, Inc. ("BBS"), into a single entity. Complaint, at ¶ 12. Prior to this agreement, the ownership of the above companies was as follows: Kubin, CMI's executive vice-president, owned 24.5 percent of the stock of CMI, Complaint, at ¶ 1, Ingram owned 24.5 percent of CMI, and Miller owned fifty-one percent of CMI's stock, Complaint, at ¶¶ 2, 3; Miller and Kubin co-owned CMBI with Miller controlling fifty-one percent of CMBI's equity and Kubin controlling forty-nine percent, Complaint, at ¶ 9; Miller and Ingram owned the equity of CAI with Miller owning fifty-one percent and Ingram owning forty-nine percent, Complaint, at ¶ 10; CAI's profits were divided among Miller (fifty percent), Ingram (thirty-five percent), and Kubin (fifteen percent). *Id.* Additionally, at all relevant times, Miller has controlled and operated BBS and another media company, Ari Trading, Inc. ("Ari"). Complaint, at ¶ 2.

According to the complaint, the late 1987 oral agreement among Kubin, Miller, and Ingram provided, *inter alia,* that Kubin would forfeit his interest in CMBI and CAI, thus facilitating the merger of CMBI, CAI, CMI, and BBS, in exchange for the performance of the following promises by Miller:

(1) Miller would distribute twenty-five percent of the operating income of the surviving company and Ari to Kubin on an annual basis,

(2) Kubin would receive 24.5 percent of the stock of the surviving company,

(3) a shareholders agreement for the surviving company would be created which would include a buy-out clause in case any shareholder should decide to leave the company, and

(4) Miller would merge BBS, CMBI, and CAI into one surviving company.

Complaint, at ¶ 13.

On January 1, 1988, CMBI and CAI were merged with CMI to create a single entity under the name CMI. Complaint, at ¶ 15. According to the complaint, however, Miller refused to merge BBS into CMI. Miller repeatedly explained to Kubin that he was unwilling to complete the merger and finalize the shareholders agreement because his divorce settlement was incomplete.[3] Complaint, at ¶¶ 18, 19. Instead, he continued to operate BBS and Ari in direct competition with CMI and diverted CMI's assets to BBS, Ari, and his own personal use, thereby violating the late 1987 oral agreement. Complaint, at ¶¶ 16, 28. Specifically, Kubin alleges that Miller "engaged in a deliberate scheme to divert assets from CMI to other companies he owned or controlled, including [BBS] and Ari." Complaint, at ¶ 26.

On October 25, 1989, however, Miller's attorney drafted a buy-sell agreement (the "buy-sell agreement") containing details of the contemplated merger. Thereafter, on December 12, 1989, Kubin and Miller signed an interim letter agreement (the "letter agreement") which acknowledged Kubin's ownership of 24.5 percent of the newly formed CMI and contained Miller's promise to fulfill his original promise to create a shareholders agreement. *See* Plaintiff's Exhibit "A", attached to Kubin Affidavit, sworn to April 2, 1992 ("Kubin Aff."). Despite the letter agreement, in January 1990, Miller informed Kubin that he would not sign a shareholders agreement. Complaint, at ¶ 24. Miller also refused to furnish any CMI shares or income to Kubin and balked at merging BBS into CMI. *Id.*

In early April 1991, Kubin and Miller entered into another oral agreement. Specifically, Miller, as the controlling partner in CMI, orally promised Kubin a finder's fee (the "finder's fee agreement") if Kubin would introduce the DeMoss Foundation ("DeMoss") to CMI as DeMoss was considering a television campaign. Complaint, at ¶¶ 30, 31. Although Kubin fulfilled his promise by introducing DeMoss to CMI (DeMoss became a client of CMI thereafter), Miller has refused to pay the promised

---

**3.** According to the complaint, Miller stated that he was unable to finalize the shareholders agreement because he was advised to keep his assets low during his divorce settlement. Complaint, at ¶ 19.

finder's fee to Kubin. Complaint, at ¶¶ 32, 33.

As a result, Kubin seeks damages for fraud, conversion, breach of contract, and breach of fiduciary duty. He also seeks mandatory injunctions requiring Miller to issue CMI and BBS stock to Kubin, and declaratory judgments proclaiming Kubin's entitlement to future CMI commissions from the DeMoss account, declaring Kubin's entitlement to 24.5 percent of CMI stock, voiding the December 12, 1989 interim letter agreement, proclaiming Kubin to be a 24.5 percent shareholder of BBS, and declaring Kubin's entitlement to twenty-five percent of the net income of CMI, BBS, and Ari.

Defendants now move for an order dismissing the complaint for lack of diversity on the grounds that Kubin and Miller are Connecticut domiciliaries and Ari's principal place of business is located in Connecticut. Kubin opposes the motion and cross-moves for the disqualification of Parker Chapin on the grounds that its continued representation of defendants constitutes a violation of Canons 4, 5, and 9 of the American Bar Association's Code of Professional Responsibility ("Model Code"). Kubin also moves for sanctions against Miller for filing a false affidavit. Defendants oppose the motions, and move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all but Kubin's breach of written contract claim (Fourth Claim for Relief).

## I. Subject Matter Jurisdiction

 District courts have original jurisdiction over civil actions where "the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332. It is well-settled that the diversity of citizenship requirement is not met when any opposing parties are citizens of the same state. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The citizenship of the parties is to be determined by the court as of the time the action is commenced. *See, e.g., Dullard v. Berkeley Associates Co.,* 606 F.2d 890, 893 (2d

Cir.1979); *Caldararo v. Au,* 570 F.Supp. 39, 40 (S.D.N.Y.1983). The party seeking to invoke diversity jurisdiction must sustain the burden of proving that complete diversity existed at the time the action was commenced. *See, e.g., Boyd, Weir & Sewell Inc. v. Fritzen–Halcyon LIJN, Inc.,* 709 F.Supp. 77, 78 (S.D.N.Y.1989) (citing *Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 601 (S.D.N.Y.1986)).

### A. Citizenship of Larry Miller

 Defendants contend that this action should be dismissed for lack of subject matter jurisdiction as both Kubin and Miller are citizens of Connecticut. Specifically, defendants contend that Miller's numerous contacts with Connecticut support the assertion that Connecticut is his domicile, thus destroying diversity jurisdiction. The Court disagrees.

 For diversity purposes, an individual's citizenship is defined as his domicile. *See Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 701 (1st Cir.1979). Justice Holmes explained that every individual may have only one domicile because the law must assign to each person a "technically pre-eminent headquarters ... in order that certain rights and duties that have been attached to it by the law may be determined." *Hawes,* 598 F.2d at 701 (citing *Williamson v. Osenton,* 232 U.S. 619, 625, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914)). An individual's domicile is determined by physical presence in the place combined with intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989) (citing *Texas v. Florida,* 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939)). When the plaintiff has shown that the defendant had a former domicile, the burden shifts to the defendant to prove that his domicile has changed. *Kaiser v. Loomis,* 391 F.2d 1007, 1009–10 (6th Cir. 1968) (citing *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954)). To sustain this burden, the defendant must show that he has acquired a new residence and intends to remain there. *Kaiser,* 391 F.2d at 1009 (cit-

ing *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874)).

In the present case, the parties do not dispute that Miller was originally domiciled in New York. Defendants contend, however, that Miller's domicile changed in 1981 when he purchased a home in South Kent, Connecticut. In support of this contention, Miller points to many factors suggesting that Connecticut is his true domicile, including: he renovated the Connecticut home and installed a pool, married in Connecticut in 1983, rented a condominium there during his divorce, uses an office in Connecticut, lists Connecticut as his principal residence on his tax returns, carries a Connecticut driver's license, services and registers his cars in Connecticut, maintains a safe deposit box in Connecticut, receives bills in Connecticut, lists Connecticut as his residence on contracts, his passport, and hotel registrations, and spends more than half the year in Connecticut. *See* Miller Affidavit, sworn to April 20, 1992, at ¶¶ 2–11.

Kubin claims that, although Miller has established an additional residence, he is still a New York domiciliary. Thus, Kubin points out that Miller lived in New York with his first wife, remarried in New York and currently lives there with his second wife in an apartment at 101 West 79th Street, owns an adjoining apartment in the same building, works full-time in New York[4] and therefore does not spend more than half the year in Connecticut, uses physicians, accountants, lawyers, and stock brokers in New York, and attends a weekly men's group in New York. *See* Kubin Aff., at ¶¶ 19–22.

Although the facts indicate that Miller did acquire a second residence in Connecticut, the Court finds that Miller has failed to sustain the burden of proving that his domicile changed from New York to Connecticut. *See Kaiser,* 391 F.2d at 1009–10. Miller's contention that he spends more than half the year in Connecticut, a matter

in dispute between the parties and inconsistent with other established facts, is given little weight by the Court. *See Korn v. Korn,* 398 F.2d 689, 691 (3d Cir.1968) (testimony about domicile "is subject to the infirmity of any self-serving declaration" and cannot prevail when contradicted by other facts). Further, given Miller's strong ties to New York, Miller has failed to establish facts which indicate his intent to remain in Connecticut. *See Mitchell,* 88 U.S. (21 Wall.) at 353.

■ Most notably, however, Miller's own admissions to this Court belie his claim that he is a Connecticut domiciliary. In 1989, Miller, relying upon his status as a New York citizen, invoked this Court's diversity jurisdiction in an action against Michael Weingarten and Video Ventures, Inc. (89 Civ. 0364). *See* Plaintiff's Exhibit "B", attached to Kubin Aff. Under well-established law, Miller is estopped from claiming New York citizenship in one federal civil action and then declaring Connecticut citizenship in order to defeat diversity jurisdiction. *See National Westminster Bank v. Ross,* 130 B.R. 656, 672 (S.D.N.Y.1991), *aff'd,* 962 F.2d 1 (2d Cir.1992) ("a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise"); *Environmental Concern, Inc. v. Larchwood Constr. Corp.,* 101 A.D.2d 591, 593, 476 N.Y.S.2d 175, 176–77 (2d Dept.1984) ("the doctrine of estoppel against inconsistent positions precludes a party from framing his pleadings in a manner inconsistent with a position taken in a prior proceeding"). Defendants have failed to present any evidence that would lead this Court to find a change in domicile after Miller's 1989 declaration to the Court. Thus, defendants' motion to dismiss for lack of subject matter jurisdiction based upon Miller's domicile is denied.

---

4. Kubin's contention that Miller works full-time in New York is supported by Miller's own admission in an affidavit submitted to Judge Freeh on February 15, 1992, in opposition to a motion to transfer or dismiss an action filed by CMI, in which Miller declared that he "work[s] full-time at Corinthian's New York office." *See* Miller's Affidavit in *Corinthian Media, Inc. v. Yelsey,* sworn to Feb. 10, 1992, attached to Kubin Aff. as Plaintiff's Exhibit "H" ("Miller Feb. 10 Aff.").

### B. *Citizenship of Ari*

Defendants also argue that Kubin has improperly invoked diversity jurisdiction as both Kubin and Ari are citizens of Connecticut. Defendants' claim rests on the assertion that Ari's principal place of business is located in Connecticut. Again, the Court disagrees with defendants' contention.

For purposes of diversity jurisdiction, a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). Determination of a corporation's principal place of business is relatively straightforward when the corporation generally conducts its business policy and makes management decisions in a single state. *Egan v. American Airlines, Inc.,* 324 F.2d 565, 565–66 (2d Cir.1963). When a corporation's activities are "far-flung and varied," however, it is more difficult to determine its principal place of business. In such instances, a court will determine the principal place of business by locating "the nerve center from which [the corporation] radiates out to its constituent parts and from which [the corporation's] officers direct, control, and coordinate all activities." *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y.1959).

In the present case, it is clear that Ari's principal place of business is New York. Defendants claim that Connecticut is Ari's principal place of business because the company's executive decisions are made there and permanent records are maintained in the Connecticut office. The Court finds, however, that defendants cannot substantiate their position.

Defendants' statement that Ari's executive decisions are made in Connecticut is inconsistent with the facts. First, it is clear that Ari's executive officers work full-time in New York. Miller's February 15, 1992 affidavit submitted to Judge Freeh in opposition to a motion to transfer or dismiss the complaint proclaims that both

he and Ingram, two of Ari's top officers, work full-time in New York. *See* Miller Feb. 10 Aff. It is incredible that Ari's executive officers work full-time in New York yet avoid making most business decisions there. Second, some of Ari's stationary and business cards do not even include the Connecticut office address. *See* Plaintiff's Exhibits "N", "O", "P", attached to Kubin Aff. Thus, even if the Court concluded that Ari's principal place of business could be located in more than one state, it is clear that New York is the "nerve center" of Ari's operations. *See Scot Typewriter,* 170 F.Supp. at 865. Accordingly, defendants' motion for an order dismissing the complaint for lack of subject matter jurisdiction based upon Ari's citizenship is denied.

### III. Disqualification

Kubin cross-moves for an order disqualifying Parker Chapin from representing defendants in this action. Kubin bases his claim on Canons 4, 5, and 9 of the Model Code.[5] Specifically, Kubin argues that Parker Chapin should be disqualified because (1) Charles P. Greenman, Esq. ("Greenman"), a Parker Chapin partner, ought to be called as a witness on behalf of defendants, (2) Parker Chapin formerly represented Kubin in matters substantially related to this action, (3) Parker Chapin is counsel for CMI, and (4) Parker Chapin's representation of defendants would create an appearance of impropriety. Defendants oppose the motion, arguing that Parker Chapin's continued representation of defendants is consistent with both the American Bar Association and the New York Bar Association's rules of professional conduct. For the reasons set forth below, the Court finds that disqualification of Parker Chapin is inappropriate in the present case.

At the outset, the Court notes that courts must be wary of disqualification motions interposed solely for tactical purposes. *Lamborn v. Dittmer,* 873 F.2d

---

**5.** The Model Code refers to the original code of professional conduct as established by the American Bar Association.

522, 531 (2d Cir.1989) (citing *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)). Further, the Court is mindful that the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel in order to protect a client's right to freely choose counsel. *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978).

### A. *Canon 5: Attorney as Witness*

 Rule 5–102(A) of the Model Code provides, in pertinent part, that "[i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation." Model Code of Professional Responsibility DR 5–102(A) (1990). Thus, the rules of professional conduct of the American Bar Association are clear that an attorney must be disqualified if he ought to testify on behalf of his client. An attorney ought to testify on behalf of his client if his testimony could be significantly useful to his client, *MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981), and it is necessary to the client's case. *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445, 515 N.Y.S.2d 735, 739, 508 N.E.2d 647 (1987). A court should examine factors such as "the significance of the matters, weight of the testimony, and availability of other evidence" when considering the necessity of the testimony. *Id.* at 446, 515 N.Y.S.2d at 739, 508 N.E.2d 647. Of course, an attorney whose testimony would merely corroborate the testimony of others may not be subject to disqualification. *MacArthur*, 524 F.Supp. at 1209. In cases in which the attorney's knowledge is highly relevant and peculiarly in his possession, however, it is clear that

he must be disqualified under 5–102(A). *See Wickes v. Ward*, 706 F.Supp. 290, 292–93 (S.D.N.Y.1989) (attorney who participated in sidebar conference at issue in current action between litigants must be disqualified); *Paretti v. Cavalier Label Co.*, 722 F.Supp. 985, 986 (S.D.N.Y.1989) ("if a lawyer negotiates, executes, and administers a contract, and is the key witness at trial, then he must be disqualified").

In the present case, it is clear that Greenman ought to be called as a witness on behalf of defendants. Greenman has unique knowledge about the parties' decision to create a shareholders agreement and Miller's alleged repudiation of that agreement. Greenman personally drafted written agreements among the parties concerning ownership of the various corporations and the proposed mergers which are now contested in this action. *See* Kubin Aff., at ¶ 47. Accordingly, Greenman is disqualified from further representation of defendants in this action.[6]

 Kubin further argues that Rule 5–102(A) of the Model Code warrants disqualification of Parker Chapin as counsel for defendants. Attorney disqualification and vicarious disqualification of the attorney's firm is in the discretion of the court. *Freight Drivers, etc. Local No. 375 v. Kingsway Transp., Inc.*, 1991 WL 224380, at *1, 1991 U.S.Dist. LEXIS 15801, at *2 (W.D.N.Y. Oct. 22, 1991) (citing *U.S. v. Perlmutter*, 637 F.Supp. 1134, 1137 (S.D.N.Y.1986)). Nonetheless, courts do look for guidance from the American Bar Association and New York Bar Association. *See, e.g., Freight Drivers*, 1991 WL 224380, at 1, 1991 U.S.Dist. LEXIS 15801, at *3. Under Rule 3.7 of the Model Rules of Professional Conduct ("Model Rules"),[7] Model Rules of Professional Conduct 3.7 (1992), and New York's Code of Professional Responsibility ("New York Code")[8] N.Y.Judiciary Law § 5–102(A) (McKinney 1992), vi-

---

**6.** The Court notes that defendants do not appear to contest that Greenman ought to be disqualified as counsel.

**7.** The Model Rules were instituted in 1990 by the American Bar Association as a further elaboration of standards of professional conduct.

**8.** The latest version of the New York Code was codified in 1992 directly from recommendations by the New York Bar Association.

**1114**

carious disqualification is no longer necessary when an individual attorney is disqualified under Rule 5–102(A) of the Model Code.[9]

As stated above, Rule 5–102(A) of the Model Code provides, in pertinent part, that "[i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation." Model Code of Professional Responsibility DR 5–102(A) (1990). Rule 3.7 of the Model Rules provides, in pertinent part, however, that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 (conflict of interest rules)." Model Rules of Professional Responsibility DR 5–102(A) (1990). Thus, while Rule 3.7 recognizes the importance of the original rule mandating the disqualification of the individual attorney-witness, the rule severely limits the circumstances in which vicarious disqualification of the attorney's firm is necessary.

The New York Bar Association, agreeing with the revised ABA position, has adopted the revised rule in the New York Code. Specifically, Rule 5–102(A) of the New York Code similarly provides that only the attorney-witness who ought to testify on behalf of his client should be disqualified.[10]

■■■ The Court agrees that vicarious disqualification is an extremely harsh measure which should be limited to special circumstances. Consequently, the Court finds that, under the new guidelines and in view of the fact that conflict of interest considerations are not present in the instant case, there is no basis for disqualifying Parker Chapin based on the necessary testimony of one of its partners in support of defendants' case. *See, e.g., Freight*

*Drivers,* 1991 WL 224380, at *4, 1991 U.S.Dist. LEXIS 15801, at *14; *Paretti,* 722 F.Supp. at 988–89.

### B. *Parker Chapin's Former Association with Kubin*

■■■ Kubin also argues that Parker Chapin's continued representation of defendants constitutes a violation of Canons 4 and 5 of the Model Code. Specifically, Kubin claims that Parker Chapin's continued representation of defendants violates Canon 4's provision that a "lawyer should preserve the confidences and secrets of a client," and Canon 5's provision that "an attorney owes a duty of undivided loyalty to a client," Model Code of Professional Responsibility Canons 4, 5 (1992), as Parker Chapin has previously represented Kubin in matters substantially related to the present action.

■■■ It is well-settled that counsel may be disqualified from representing a client if (1) the moving party is a former client of the adverse party's counsel, (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit, and (3) the attorney whose disqualification is sought had access to relevant, privileged information in the course of his prior representation of the client. *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265, 268 (S.D.N.Y.1953).

To satisfy the above criteria, Kubin must first demonstrate the existence of an attorney-client relationship. In an effort to do so, Kubin argues that he always believed that Greenman was his own lawyer, and, consequently, he shared confidential information with Greenman. Specifically, Kubin states that he discussed:

---

**9.** The Model Code, Model Rules, and New York Code are not binding on the Court. The Court does, however, look to these sources for guidance, viewing each source as equally persuasive.

**10.** Rule 5–102(A) of the New York Code provides, in pertinent part, that "[i]f, after under-

taking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of the client, the lawyer shall withdraw as an advocate before the tribunal." N.Y. Judiciary Law § 5–102(A) (McKinney's 1992).

(1) the deterioration of [his] business relationship with Miller; (2) the appropriate terms of a CMI buy/sell agreement; (3) the issuance of CMI stock certificates; (4) the execution of a CMI shareholders agreement; (5) the calculation of the net values of CMI, [BBS], and Ari ... (6) numerous details respecting [his] share of the stock and profits of CMI, [BBS], and Ari, and (7) personal financial details respecting [his] salary, assets, and net worth.

*See* Kubin Aff., at ¶ 40. The Court finds these facts insufficient to establish the existence of an attorney-client relationship under the circumstances presented here.

 Under New York law, "the relationship of an attorney and client is contractual, and the rules governing contractual formation determine whether such a relationship has been created." *Hashemi v. Shack*, 609 F.Supp. 391, 393 (S.D.N.Y. 1984). Formality, however, "is not an essential element in the employment of an attorney." *Id.* (quoting *People v. Ellis*, 91 Misc.2d 28, 35, 397 N.Y.S.2d 541, 545 (N.Y.Sup.Ct. (1977)). In order to determine whether an attorney-client relationship exists, "it is necessary to look at the words and actions of the parties." *Id.* Certain factors are highly relevant in ascertaining whether an attorney-client relationship has been formed. For example, although a fee arrangement is not necessary for the establishment of an attorney-client relationship, the absence of such an arrangement can be an indication that an attorney-client relationship never existed. *Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F.Supp. 360, 366 (S.D.N.Y.1992); *see also Young v. Oak Crest Park, Inc.*, 75 A.D.2d 956, 957, 428 N.Y.S.2d 69, 71 (3d Dept.1980). Additionally, although the so-called client's subjective belief can be considered by the court, *Dalrymple v. National Bank and Trust Co.*, 615 F.Supp. 979 (W.D.Mich. 1985), this belief is not sufficient to establish an attorney-client relationship. *U.S. v. Keplinger*, 776 F.2d 678, 701 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986).

Here, it is clear that Kubin has failed to demonstrate that he and Greenman ever had an attorney-client relationship. According to the documents submitted to the Court, there was no written contract between Kubin and Greenman indicating that Greenman ever accepted employment as Kubin's attorney. Absent, too, is any suggestion that Greenman and Kubin had an informal relationship in which Greenman performed legal services gratuitously. Further, the facts do not support Kubin's contention that he believed Greenman was his lawyer and that he believed that information given to Greenman would be kept confidential. Kubin merely suggests that, in his capacity as an executive officer of CMI, he discussed matters related to the business. Accordingly, as Kubin has failed to establish the existence of an attorney-client relationship with Parker Chapin, Kubin's motion to disqualify Parker Chapin on the grounds that it formally represented him in matters substantially related to the present case is denied.

### C. *Parker Chapin's Representation of CMI*

 Kubin moves, in the alternative, for the disqualification of Parker Chapin on the grounds that its representation of CMI precludes its representation of CMI and Miller against Kubin. Specifically, Kubin argues that Canon 4 requires Parker Chapin to represent the interests of each of CMI's shareholders, and thus avoid taking a position adverse to Kubin. The Court disagrees, and finds that Parker Chapin's representation of CMI does not require disqualification in the present case.

 Canon 4 does not require disqualification of counsel whenever a firm represents a close corporation. *See, e.g., Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977); *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220, 1223 (S.D.N.Y.1982). For example, the Second Circuit has held that a shareholder's motion for the disqualification of opposing counsel should not be granted where the shareholder knew that information given to the corporation's counsel would not be kept confi-

dential. *Allegaert,* 565 F.2d at 250. Further, if a law firm has had a long-term relationship with only one of the shareholders, a court may determine that the firm may represent one shareholder against the others. *Id.*

Applying the law to the present case, Parker Chapin is not precluded from representing defendants in this matter as a result of its representation of CMI. Kubin was aware that Parker Chapin had represented Miller for many years, *see* Greenman Affidavit, sworn to April 20, 1992, at ¶ 6, and, therefore, he could not have expected his discussions with Parker Chapin regarding CMI to be kept confidential. Kubin's reliance upon *Rosman v. Shapiro,* 653 F.Supp. 1441, 1445–46 (S.D.N.Y.1987), is inapposite as, there, the court merely held that a firm could not represent one shareholder against another when the firm began representing both shareholders at the same time. Accordingly, Kubin's motion to disqualify Parker Chapin based upon its representation of CMI is denied.

### D. *Canon 9: Impropriety*

Under Canon 9 of the Model Code, attorneys have a duty "to strive to avoid not only professional impropriety but also the appearance of professional impropriety." ABA Code of Professional Responsibility, Canon 9 (1992); *see also Planning & Control, Inc. v. MTS Group, Inc.,* 1992 WL 51569, at *4, 1992 U.S.Dist. LEXIS 3004, at *13 (S.D.N.Y. March 11, 1992). The Second Circuit has held, however, that courts should be hesitant to disqualify attorneys solely on Canon 9 grounds. *See Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 806 (S.D.N.Y.1991). As the Court holds that Parker Chapin is not subject to disqualification based on any other Canon, the Court will not consider disqualifying Parker Chapin solely on Canon 9 grounds.

### IV. Rule 11 Sanctions

Kubin also cross-moves, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against Miller for filing a false affidavit. Upon consideration, the Court finds sanctions to be unwarranted under these circumstances. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Accordingly, sanctions are denied.

### V. Fraud Claims

Defendants move, pursuant to Rule 12(b)(6), for an order dismissing Kubin's common law fraud claims (First, Second, and Eighth Claims for Relief).[11] Specifically, defendants argue that Kubin's fraud claims may not be maintained as they are merely breach of contract claims which Kubin has attempted to convert into fraud claims. Defendants further argue that Kubin has failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure as Kubin has failed both to allege facts establishing scienter and to plead fraud with the requisite particularity.

### A. *Independence of Fraud Claims from Breach of Contract Claim*

 Defendants first argue that the fraud claims should be dismissed as they are actually breach of contract claims. The Court agrees.

 In order to properly plead fraud, a plaintiff must allege "specific facts from which a reasonable trier of fact could directly or indirectly infer that the promisor intended not to honor his obligations at the time the promise was made." *Drexel Burnham Lambert Group, Inc. v. Microgenesys, Inc.,* 775 F.Supp. 660, 664 (S.D.N.Y.1991); *see also Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). Thus, bald assertions that the breaching party never intended to honor a contract do not constitute fraud. *Drexel Burnham Lambert*

**11.** Defendants similarly move for an order dismissing two declaratory judgment claims (Twelfth and Thirteenth Claims for Relief) and one mandatory injunction claim (Fourteenth Claim for Relief) arising, in part, out of Kubin's fraud claims. The Court will consider these claims in conjunction with Kubin's common law fraud claims since these claims (Twelfth, Thirteenth, and Fourteenth Claims for Relief) are based, in part, upon defendants' alleged fraudulent conduct.

*Inc. v. Saxony Heights Realty Assoc.*, 777 F.Supp. 228, 235 (S.D.N.Y.1991).

Kubin has failed to allege specific facts to support his claim that Miller did not intend to honor the three contracts [12] at the time the contracts were made. Instead, the complaint merely alleges that Miller, in fact, never lived up to his agreements with Kubin. *See* Complaint, at ¶¶ 16, 18–20, 24–25. Under well-settled law, Kubin cannot create a fraud claim without alleging facts from which this Court could infer Miller's intention to breach the contracts at the time of their creation.[13]

### B. *Particularity*

■ Defendants also contend that Kubin's fraud claims should be dismissed for failure to plead fraud with particularity. According to the defendants, the complaint fails to specify the time, place, or fraudulent aspect of any statements made by Miller.

■ Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

■ In order to plead fraud with particularity, a plaintiff must allege the following: (1) the specific statements or omissions, (2) the aspect of the statement or omission that makes it false or misleading,

(3) when the statement was made, (4) where the statement was made, and (5) which defendant is responsible for the statement or omission. *See Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir. 1985) (citing *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978)).

Upon review of the complaint, the Court finds that Kubin has failed to plead fraud with the requisite particularity. Although the complaint contains various references to statements made by Miller, *see* Complaint, at ¶¶ 13, 18–21, 24, Kubin has failed to specify either the time, *see* Complaint, at ¶¶ 12–13, 17–21, or place, *see* Complaint, at ¶¶ 12–13, 17–20, 24, of each of Miller's alleged statements. Additionally, Kubin has failed to allege which specific aspects of Miller's statements were false or misleading. *See* Complaint, at ¶¶ 12–13, 17–21, 24. Accordingly, defendants' motion for an order dismissing Kubin's First, Second, Eighth, Twelfth, Thirteenth, and Fourteenth Claims for Relief is granted.

## VI. Conversion Claim

Kubin alleges that defendants are liable for conversion as a result of the diversion of CMI business, assets, and profits from CMI to themselves. Complaint, at ¶ 57. Defendants move, pursuant to Rule 12(b)(6), for an order dismissing Kubin's conversion claim (Sixth Claim for Relief).[14] Specifically, defendants argue that (1) Kubin's conversion claim is an improperly reformulated contract claim, (2) Kubin has failed to allege an immediate superior right to possession of an identifiable thing, and (3) Kubin has failed to identify tangible personal property or specific money to which he is entitled.

---

**12.** Kubin's fraud claims are based upon the late 1987 oral agreement, the letter agreement, and the finder's fee agreement.

**13.** As stated above, defendants also contend that the complaint fails to properly allege scienter. Defendants' argument again rests on the claim that Kubin has failed to plead facts indicating Miller's intention to breach his agreements with Kubin at the time the contracts were made. Thus, as this argument is essentially the same as defendants' claim that Kubin has attempted to

convert a contract claim into a claim for fraud, the Court reaffirms its finding that Kubin has failed to plead facts indicating defendants' intent to defraud.

**14.** The Court considers this motion to include Kubin's Seventeenth Claim for Relief as that claim requests a judgment restraining and enjoining defendants from continuing to convert Kubin's property.

A. *Distinct Conversion Claim*

 Under well-settled law, an action in tort, such as conversion, may not lie for simple "nonperformance under an alleged agreement." *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 863, 521 N.Y.S.2d 917, 918 (4th Dept.1987). In order to maintain a conversion claim, a plaintiff must set forth additional allegations of wrongdoing. *Id.* (citing *Burlew v. American Mut. Ins. Co.*, 99 A.D.2d 11, 16, 471 N.Y.S.2d 908, 912 (4th Dept.1984); *Wegman v. Dairylea Coop.*, 50 A.D.2d 108, 112–13, 376 N.Y.S.2d 728, 734–35 (4th Dept. 1975)).

 Defendants' contention that Kubin has failed to allege additional acts of wrongdoing is without merit. Kubin specifically alleges that "Miller has diverted and continues to divert CMI business, assets and profits from CMI to himself and to other entities he owns or controls, including [BBS] and Ari, and [BBS] and Ari have diverted and continue to divert CMI business, assets and profits from CMI to themselves." Complaint, at ¶ 57. This allegation is distinct from Kubin's contention that defendants have failed to perform the three alleged agreements between Kubin and Miller.[15] Consequently, the Court finds that Kubin's conversion claim is independent of his contract claims.

B. *Immediate Superior Right to an Identifiable Thing*

 Defendants claim that Kubin's conversion claim should be dismissed as Kubin has failed to identify an immediate superior right to an identifiable thing. Specifically, defendants contend that Kubin does not possess an ownership right over the subject of the conversion claim, namely, Kubin's share of CMI.

 In order to maintain a claim for conversion, a plaintiff must establish an immediate superior right to an identifiable

thing. *Melnick v. Kukla*, 228 A.D. 321, 323, 239 N.Y.S. 16, 18 (4th Dept.1930). In the instant case, Kubin has specifically alleged that the letter agreement with defendants created an entitlement to shares of CMI. Complaint, at ¶¶ 13, 21.

Defendants' reliance upon *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 757, 365 N.Y.S.2d 44, 46 (2d Dept. 1975), for the proposition that a conversion claim does not lie for the withholding of indefinite, intangible, and incorporeal species of property, is misplaced. In that case, the court based its decision on the fact that the agreement between the parties did not require the defendant to make any payments to the plaintiff. Thus, the plaintiff could not claim any right of possession. Accordingly, the Court finds that Kubin's conversion claim properly pleads facts which indicate an immediate superior right to possession of the property at issue.

C. *Tangible Personal Property or Specific Money*

 Defendants next contend that Kubin's conversion claim fails to allege that tangible personal property or specific money is the subject of the conversion claim. Under New York law, "a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *Matzan*, 134 A.D.2d at 863–64, 521 N.Y.S.2d at 918. Money can be the subject of a conversion action, however, when it can be segregated and identified. *Payne v. White*, 101 A.D.2d 975, 976, 477 N.Y.S.2d 456, 458 (3rd Dept.1984). Further, stocks certificates and bonds are now considered actionable in conversion claims. *Iglesias v. U.S.*, 848 F.2d 362, 364 (2d Cir.1988) (citing *Pierpoint v. Hoyt*, 260 N.Y. 26, 29, 182 N.E. 235, 236 (1932)). To the extent that Kubin's conversion claim rests upon the withholding of stock certificates (24.5 percent of CMI and BBS), Kubin has alleged a viable conversion claim.[16]

---

**15.** The three agreements are the late 1987 oral agreement, the letter agreement, and the finder's fee agreement.

**16.** The Court finds that the portion of Kubin's conversion claim that seeks to recover profits

(twenty-five percent of the net income of CMI, BBS, and Ari) and additional amounts allegedly diverted by Miller is dismissed without prejudice as there is no allegation that defendants converted specifically identifiable money with

Accordingly, defendants' motion to dismiss Kubin's conversion claim based upon the withholding of stock certificates is denied.

## VII. Breach of Fiduciary Duty Claim

■■■■ Kubin contends that Miller breached his fiduciary duty to Kubin by diverting CMI business, assets and profits from Kubin to BBS, Ari, and himself (Seventh Claim for Relief).[17] Defendants argue that Kubin's claim for breach of fiduciary duty should be dismissed as it is another improperly converted contract claim. As discussed above, however, where a plaintiff includes "additional allegations of wrongdoing," distinct from the breach of contract claim, an action in tort is properly pled. *Matzan*, 134 A.D.2d at 863, 521 N.Y.S.2d at 918. Consequently, as Kubin has set forth additional allegations of wrongdoing, namely that Miller has intentionally diverted CMI business to BBS, Ari, and his own personal use, the Court finds that Kubin has alleged a viable breach of fiduciary duty claim.

## VIII. Statute of Frauds

Defendants move for an order dismissing two breach of contract claims on the grounds that these claims are barred by the Statute of Frauds. Specifically, defendants argue that Kubin's breach of contract claim based upon the late 1987 oral agreement (Third Claim for Relief) is barred by General Obligations Law § 5–701(a)(1) and New York Uniform Commercial Code § 8–319. Defendants further argue that Kubin's breach of contract claim based upon the finder's fee agreement (Ninth Claim for Relief) [18] is barred by General Obligations Law § 5–701(a)(10).

respect thereto. *See, e.g., Payne,* 101 A.D.2d at 976, 477 N.Y.S.2d at 458.

**17.** Kubin bases Miller's fiduciary duty on "Miller's position as a common law trustee of Kubin's monies, Miller's position as a director, officer, and shareholder of CMI and Kubin's position as a director, officer and shareholder of CMI." *See* Complaint, at ¶ 61. Defendants do not contest the existence of Miller's fiduciary duty.

### A. *Late 1987 Oral Agreement*
#### 1. Severability

■■■ According to the complaint, the late 1987 oral agreement contains four separate promises by Miller. Defendants claim that the entire agreement is barred by General Obligations Law § 5–701(a)(1). Defendants' argument, however, is based upon only one of the four promises.[19] Consequently, although neither side addresses the issue, Kubin's breach of contract claim based upon the late 1987 oral agreement requires the Court to determine, as a preliminary matter, whether the contract is severable.

■■■ The general rule in New York is: if part of an entire contract is void under the Statute of Frauds, the whole of such contract is void. Where, however, a parol contract is a severable one, i.e., susceptible of division and apportionment, having two or more parts not necessarily dependent upon each other, those which, if standing alone, are not required to be in writing, may be enforced.

*Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1162 (S.D.N.Y.1988) (citing *Dickenson v. Dickenson Agency, Inc.,* 127 A.D.2d 983, 984, 512 N.Y.S.2d 952, 953 (4th Dept.1987)).

In the present case, Kubin alleges that Miller made four oral promises in exchange for Kubin's decision to forfeit his interest in CMBI and CAI. Specifically, Kubin claims that Miller promised to (1) distribute twenty-five percent of the income of CMI and Ari to Kubin on an annual basis; (2) transfer CMI stock to Kubin; (3) create a shareholders agreement; and (4) merge BBS, CMBI, and CAI into CMI. The Court finds that, as General Obligations Law § 5–701 does not require the latter three

**18.** Kubin's Tenth Claim for Relief will be considered in conjunction with the Ninth Claim for Relief as the former claim merely restates the latter and requests a declaratory judgment remedy.

**19.** Defendants argue that Miller's alleged promise to distribute twenty-five percent of the income of CMI and Ari to Kubin on an annual basis is barred by General Obligations Law § 5–701(a)(1).

promises to be in writing, those promises are severable from Miller's promise to distribute income to Kubin and, consequently, not void under that statute. The Court therefore turns its attention to defendants' alleged promise to distribute twenty-five percent of the income of CMI and Ari to Kubin.

**2. General Obligations Law § 5–701(a)(1)**

 General Obligations Law § 5–701(a)(1) states that:

> [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

N.Y. General Obligations Law § 5–701(a)(1) (McKinney 1992). At the outset, the Court recognizes that this statute must be construed so that its effect is limited to those contracts which, by their terms, cannot *possibly* be fully performed within one year. *D & N Boening Inc. v. Kirsch Beverages Inc.*, 63 N.Y.2d 449, 454, 483 N.Y.S.2d 164, 165, 472 N.E.2d 992, 993 (1984). Thus, the court must look to the nature of the oral agreement in order to determine if there is any possibility that the agreement could have been completed within one year. *Id.* (citing *Warner v. Texas and Pacific Ry.*, 164 U.S. 418, 434, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896)). The Statute of Frauds, however, may not be avoided simply because it is possible that one party may breach the contract within one year. *Koret, Inc. v. RJR Nabisco, Inc.*, 702 F.Supp. 412, 414–15 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 307 (2d Cir.1989) (citing *D & N Boening*, 63 N.Y.2d at 457, 483 N.Y.S.2d at 167, 472 N.E.2d 992), *aff'd*, 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984)). Moreover, the fact that one party may go out of business is not relevant in determining whether the oral agreement can be fulfilled within one year. *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 742 F.Supp. 808, 810 (S.D.N.Y.1990).

Under well-settled law, the portion of Kubin's breach of contract claim referring to the distribution of "twenty-five percent of the operating income of [CMI] and Ari" in the late 1987 oral agreement is barred by General Obligations Law § 5–701(a)(1). Even liberally construed, this portion of the oral agreement between Kubin and Miller cannot be performed within one year absent a breach by one party or the collapse of CMI and Ari. According to Kubin, the late 1987 oral agreement required Miller to make "annual" payments to Kubin based upon the net income of CMI and Ari. Thus, the terms of the agreement clearly anticipate multiple payments over a period of more than one year. Accordingly, the portion of Kubin's breach of contract claim referring to annual income distribution of the income of CMI and Ari to Kubin is dismissed for failure to comply with the Statute of Frauds.

**3. New York Uniform Commercial Code § 8–319** [20]

 New York Uniform Commercial Code § 8–319 provides that:

> [a] contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom an enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.

N.Y. Uniform Commercial Code § 8–319 (McKinney 1992). Defendants argue that this provision warrants dismissal of Kubin's entire breach of contract claim based upon the late 1987 oral agreement. Kubin contends, however, that writings made subsequent to the late 1987 oral agreement and the existence of past consideration con-

---

**20.** Since the Court has held that General Obligations Law § 5–701(a)(1) precludes only a portion of Kubin's breach of contract claim based upon the late 1987 oral agreement, it will now consider whether New York Uniform Commercial Code § 8–319 bars the entire breach of contract claim.

tained in one of these writings exempt the application of § 8–319 of the New York Uniform Commercial Code. The Court finds Kubin's argument without merit.

■ Under New York law, "[c]ompliance with [§ 8–319] may be found if an agreement can be 'pieced together out of separate writings,' not all of which need be signed, provided they clearly refer to the same transaction, include all items of the contract, and at least one of them bears the signature of the party." *APS Food Systems, Inc. v. Ward Foods, Inc.*, 70 A.D.2d 483, 486, 421 N.Y.S.2d 223, 225 (1st Dept. 1979) (quoting *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54, 110 N.E.2d 551, 553 (1953)). Thus, Kubin argues that the buy-sell agreement and the letter agreement reinforce the oral agreement, thereby avoiding the effect of § 8–319. This position is untenable as these two writings fail to "include all items of the contract." *Id.* Specifically, these writings neither include any reference to the merger of BBS and Ari into CMI, nor mention distributing income of CMI and Ari to Kubin, both of which, according to Kubin, are integral provisions of the oral agreement. *See* Plaintiff's Exhibits "A", "U", attached to Kubin Aff.

■ New York law also exempts the effect of § 8–319 where the plaintiff can present written evidence that specifically recognizes past consideration for the defendant's oral promise. *See Conroy v. Digital Storage, Inc.*, 170 A.D.2d 1030, 1031, 566 N.Y.S.2d 173, 175 (4th Dept.1991). Thus, Kubin further argues that the letter agreement refers to past consideration in exchange for Miller's various promises. This contention fails, however, as the letter contains no reference to past consideration given by Kubin. Specifically, the letter fails to mention Kubin's decision to forfeit his interest in CMBI and CAI in order to facilitate the merger. Accordingly, as New York Uniform Commercial Code § 8–319 bars Kubin's entire breach of contract claim based upon the late 1987 oral agree-

ment, defendants' motion to dismiss Kubin's breach of contract claim based upon the late 1987 oral agreement is granted.

**B.** *DeMoss Finder's Fee*

■ Kubin's Ninth Claim for Relief alleges that Miller breached his oral contract with Kubin by failing to pay him a finder's fee in connection with the DeMoss account. In the Tenth Claim for Relief, Kubin claims that he is entitled to future CMI commissions based on the DeMoss account as Kubin relied upon Miller's promise to pay the finder's fee in introducing DeMoss to Miller. Defendants argue that these claims are barred by General Obligations Law § 5–701(a)(10). The Court agrees.

■ General Obligations Law § 5–701(a)(10) provides, in pertinent part, that: [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of ... a business opportunity, business, its good will, inventory, fixtures or an interest therein ...

N.Y. General Obligations Law § 5–701(a)(10) (McKinney's 1992). It is well-settled in New York that, under this provision, a party may not state a finder's fee claim based upon an oral agreement. *Warshay v. Guinness PLC*, 750 F.Supp. 628, 634 (S.D.N.Y.1990), *aff'd*, 935 F.2d 1278 (2d Cir.1991). Consequently, Kubin may not maintain an action for breach of an oral contract arising out of the finder's fee agreement.[21]

■ Kubin argues, however, that, even if his claim for breach of the finder's fee agreement is untenable, the Tenth Claim for Relief (requesting CMI's future commissions from the DeMoss account) is independently viable. Kubin asserts that this

---

**21.** Kubin's reliance upon *Ambrose Mar–Elia Co. v. Dinstein*, 151 A.D.2d 416, 543 N.Y.S.2d 658 (1st Dept.1989), is misplaced as, in that case, the

finder's fee claim was based, in part, upon a written agreement between the parties.

contract claim should be maintained as it rests upon the doctrine of promissory estoppel. Again, the Court disagrees.

The doctrine of promissory estoppel, as set forth in Section 139 of the Restatement of Contracts, Second, provides that a promise which the promisor should reasonably expect to induce action or forbearance, is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. *See D & N Boening Inc. v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 523, 471 N.Y.S.2d 299, 302. Under New York law, however, this doctrine is limited to cases in which application of the Statute of Frauds would lead to an unconscionable result. *Id.; see also Tutak v. Tutak*, 123 A.D.2d 758, 760, 507 N.Y.S.2d 232, 233 (2d Dept. 1986). The loss of a finder's fee does not fall within the ambit of this doctrine as the resulting loss is not generally classified as unconscionable. *See Philo Smith & Co. v. Uslife Corp.*, 420 F.Supp. 1266, 1274 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir. 1977) (loss of finder's fee is insufficient damage under New York law to avoid application of the Statute of Frauds). Accordingly, defendants' motion to dismiss both Kubin's breach of contract claims (Ninth and Tenth Claims for Relief) based upon the finder's fee agreement, is granted.

## IX. Rule 8(a) and 8(e)

Defendants argue that Kubin's Fifth, Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth Claims for Relief should be dismissed for failure to comply with Rule 8(a) and Rule 8(e) of the Federal Rules of Civil Procedure.[22] Upon consideration of defendants' motion and a review of the claims at issue, the Court finds that dismissal on these grounds is not warranted.

## X. Punitive Damages

Defendants move for an order dismissing Kubin's claims for punitive damages in con-

nection with Kubin's fraud (First, Second, and Eighth Claims for Relief), conversion (Sixth Claim for Relief), and breach of fiduciary duty (Seventh Claim for Relief) claims.

### A. *Fraud Claims*

Under New York law, a plaintiff may recover punitive damages where it is proved that the defendant "entered the transaction with the clear and blatant intent to defraud." *Commerzanstalt v. Telewide Systems, Inc.*, 880 F.2d 642, 649 (2d Cir.1989). In the instant case, however, Kubin has failed to state a viable fraud claim. Consequently, Kubin's claim for punitive damages arising out of the fraud claims is dismissed.

### B. *Breach of Fiduciary Duty Claim*

New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims. *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 586 (S.D.N.Y. 1989); *see also Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 63 (2d Cir.1985). Accordingly, as Kubin has alleged a colorable breach of fiduciary duty claim, defendants' motion to dismiss Kubin's claim for punitive damages arising out of the alleged breach of fiduciary duty is denied.

### C. *Conversion Claim*

Punitive damages "may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right." *Airlines Reporting Corp.*, 721 F.Supp. at 586 (quoting *Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.*, 106 Misc.2d 866, 869, 435 N.Y.S.2d 438, 441 (N.Y.Sup. Ct.1980)). In the present case, Kubin has alleged facts which could lead a jury to conclude that defendants acted with malice, recklessness, or in willful disregard of Ku-

---

**22.** Rule 8(a) states, in relevant part, that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Rule 8(e) states, in relevant part, that "each averment of a pleading shall be simple, concise, and direct." Fed. R.Civ.P. 8(e).

bin's right. Specifically, Kubin has alleged that Miller intentionally converted stock certificates from Kubin in order to enrich himself and his own companies, BBS and Ari. Accordingly, defendants' motion to dismiss Kubin's punitive damages claim arising out of the conversion claim is denied.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are granted in part and denied in part. Kubin's cross-motions are denied. Specifically, defendants' motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, is denied. Kubin's cross-motion for an order disqualifying Parker Chapin from representing defendants in this action is denied. Kubin's cross-motion, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against Miller, is denied.

Defendants' motion to dismiss Kubin's fraud claims (First, Second, Eighth, Twelfth, Thirteenth, and Fourteenth Claims for Relief) is granted and those claims are dismissed without prejudice. Defendants' motion to dismiss two of Kubin's breach of contract claims is granted. Specifically, defendants' motion to dismiss Kubin's breach of contract claim arising out of the late 1987 oral agreement (Third Claim for Relief) and Kubin's breach of contract claims arising out of the finder's fee agreement (Ninth and Tenth Claims for Relief), is granted and those claims are dismissed without prejudice. Defendants' motion to dismiss Kubin's conversion claim (Sixth Claim for Relief) is granted in part and denied in part. Specifically, defendants' motion to dismiss Kubin's conversion claim based upon the withholding of stock in CMI is denied. Defendants' motion to dismiss the remainder of Kubin's conversion claim is granted and that portion of the claim is dismissed without prejudice. Defendants' motion to dismiss Kubin's breach of fiduciary duty claim (Seventh Claim for Relief) is denied. Defendants' motion to dismiss Kubin's Fifth, Fifteenth, and Sixteenth Claims for Relief for failure to comply with Rules 8(a) and 8(e) of the Federal Rules of Civil Procedure is denied.

Defendants' motion to dismiss Kubin's punitive damages claims is granted in part and denied in part. Specifically, defendants' motion to dismiss Kubin's punitive damages claim in connection with the fraud claims is granted and that claim is dismissed without prejudice. Defendants' motion to dismiss Kubin's punitive damages claim in connection with the breach of fiduciary duty claim is denied. Defendants' motion to dismiss Kubin's punitive damages claim with respect to the portion of the conversion claim based upon the withholding of CMI stock is denied. Defendants' motion to dismiss the remainder of Kubin's punitive damages claim arising out of the remainder of Kubin's conversion claim is granted and that portion of the conversion claim is dismissed without prejudice.

Kubin is granted leave to replead within 30 days of the date of this Order. Defendants' time to respond or otherwise move with respect to the remaining claims (Fourth, Fifth, Sixth, Seventh, and Eleventh, and Fifteenth through Seventeenth Claims for Relief) is accordingly stayed for 30 days.

SO ORDERED.