*440 OPINION OF THE COURT
Kaye, J.
The advocate-witness disqualification rules contained in the Code of Professional Responsibility provide guidance, not binding authority, for courts in determining whether a party’s law firm, at its adversary’s instance, should be disqualified during litigation. Courts must, in addition, consider such factors as the party’s valued right to choose its own counsel, and the fairness and effect in the particular factual setting of granting disqualification or continuing representation. Concluding that the court below failed to exercise any discretion, and that disqualification was not required by the circumstances presented, we reverse the Appellate Division order and deny defendant’s motion.
Plaintiff (S & S Hotel Ventures Limited Pártnership) owned a hotel and office building complex in Houston, Texas. In February 1981, in exchange for a $15 million loan from defendant (777 S. H. Corp.), plaintiff executed a promissory note secured by a deed of trust, including a provision that the loan would fall due immediately if plaintiff transferred title without consent but that defendant would not unreasonably withhold or delay its consent. Beginning in late 1982, and culminating in a sale of the property in March 1983, plaintiff proposed two purchasers and communicated with defendant in an effort to secure its consent. In the present action, plaintiff alleges that defendant unreasonably withheld and delayed its consent so as to favor one of the proposed purchasers and also to secure better terms for itself, ultimately resulting in the sale of the property at a greatly reduced price.
*441 The complaint — charging that defendant breached its contract and tortiously interfered with plaintiffs contracts to sell the properties — was served March 22, 1984; there are no counterclaims. Nine months after the action was commenced, on January 3, 1985, after Special Term and the Appellate Division denied defendant’s motion to dismiss the tort claim, and after an exchange of documents and plaintiffs answers to defendant’s interrogatories, defendant moved to disqualify plaintiffs counsel, the firm of Bell, Kalnick, Beckman, Klee & Green, a firm of more than 20 attorneys, on the ground that Herman Sassower, "of counsel” to the firm, and Stephen Seldin, one of its real estate partners, "ought to be called as witnesses at trial on behalf of plaintiff.” No question is raised regarding client confidences and secrets (Code of Professional Responsibility Canon 4).
Special Term ordered disqualification of the law firm on the ground that Sassower[1] ought to be called as plaintiff’s witness, finding that he had knowledge of the circumstances surrounding the deed of trust that "would be material in determining the intent of the parties regarding the alleged unreasonable withholding or delay in consenting to a transfer.” While itself believing that the materiality of such knowledge would be "questionable” in the present action, the court nonetheless held that, because all doubts were to be resolved against continuing representation, both Sassower and the entire firm should be disqualified. The court rejected plaintiff’s allegation of financial hardship, because financial hardship was "insufficient under DR 5-101 (B) (4) to avoid such disqualification if Herman Sassower 'ought to be called as a witness’ ”. Acceding to plaintiffs request, however, the disqualification was limited to trial (see, Norman Norell, Inc. v Federated Dept. Stores, 450 F Supp 127). The Appellate Division, over the dissent of two Justices, affirmed, agreeing that Sassower ought to be called as a witness because of his intimate involvement in the events in issue, and therefore the firm must be disqualified. The court further found that Special Term had struck an appropriate balance by limiting the disqualification to trial, and it granted leave to appeal on a certified question (CPLR 5713).
*442 The following background facts are taken from the parties’ affidavits. Sassower is "of counsel” to Bell Kalnick, which he describes as a facilities-sharing arrangement; he claims that he maintains an "independent legal practice” and on a case-by-case basis also uses the law firm. Until January 1, 1982 Sassower was plaintiff’s sole general partner. As such, on February 17, 1981, he executed the loan agreement on plaintiff’s behalf. Sassower was succeeded as general partner by S & S Realty, Inc., owned by his brother, Philip Sassower (as president) and Lawrence Schneider. Between January 1, 1982 and March 1983, Sassower in his affidavit in opposition to disqualification states that he served plaintiff only as its lawyer.[2] Both Sassower and Seldin — neither a litigator — are said to have participated in negotiating the loan agreement that was allegedly breached as well as plaintiff’s sale agreements that were allegedly interfered with. Sassower additionally signed several documents on plaintiff’s behalf.
While acknowledging their participation, plaintiff urges that neither Sassower nor Seldin has firsthand knowledge of the disputed facts regarding the key issue in the case — defendant’s wrongful refusal or delay in consenting to the sale. Plaintiff insists that only Philip Sassower has firsthand knowledge pertinent to defendant’s unlawful purposes in refusing or delaying consent. Herman, Philip and the firm have each submitted affidavits attesting that the relevant conversations with defendant’s representatives regarding sale of the property and defendant’s consent were with Philip, not Herman; that Philip was the person who repeatedly requested defendant’s consent and knows of defendant’s wrongful conduct; and that it will present its case at trial through documents and the testimony of Philip Sassower. Both plaintiff and counsel represent in their affidavits that neither Herman Sassower nor Stephen Seldin has participated in the conduct of the litigation, nor will they, and that the firm has no intention or need to call either of them as a witness at trial. Finally, plaintiff emphasizes that disqualification will impose hardship arising out of the need to duplicate hundreds of hours of legal work, and delay the litigation.
Plaintiff thus adamantly resists disqualification of its law *443 firm, declaring that Sassower will not be a witness; defendant with equal fervor argues that Sassower has relevant knowledge of the negotiation of the loan agreement, its meaning and intent, and the communications between the parties regarding consent, and therefore must be a witness.
The majority below found that Sassower ought to be a witness because of his involvement in the relevant transactions, and it then simply imposed disqualification of the firm as the mandated consequence under the Code of Professional Responsibility. We conclude that this was error.
The Code of Professional Responsibility establishes ethical standards that guide attorneys in their professional conduct, and its importance is not to be diminished or denigrated by indifference (see, Matter of Weinstock, 40 NY2d 1, 6). When raised in litigation, however — which in addition to matters of professional conduct directly involves the interests of clients and others — the Code provisions cannot be applied as if they were controlling statutory or decisional law. "When we agree that the Code applies in an equitable manner to a matter before us, we should not hesitate to enforce it with vigor. When we find an area of uncertainty, however, we must use our judicial process to make our own decision in the interests of justice to all concerned.” (Foley & Co. v Vanderbilt, 523 F2d 1357, 1360 [Gurfein, J., concurring].)
Disqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party’s right to representation by the attorney of its choice (see, Matter of Abrams [John Anonymous], 62 NY2d 183). The right to counsel of choice is not absolute and may be overridden where necessary — for example, to protect a compelling public interest — but it is a valued right and any restrictions must be carefully scrutinized (id., at 196). Moreover, we cannot ignore that where the Code of Professional Responsibility is invoked not in a disciplinary proceeding to punish a lawyer’s own transgression, but in the context of an ongoing lawsuit, disqualification of a plaintiff’s law firm can stall and derail the proceedings, redounding to the strategic advantage of one party over another (see, e.g., Allegaert v Perot, 565 F2d 246; see also, Note, The Advocate-Witness Rule: If Z, Then X. But Why?, 52 NYU L Rev 1365).[3] Already more than three years have elapsed since the present action was instituted.
*444 We recognize that the motion involves other interests as well. The Code provisions pertaining to disqualification are grouped under Canon 5: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client.” Thus, while many diverse justifications have been offered,[4] the Code has rooted disqualification of a lawyer-witness in the concept that a lawyer’s professional judgment should be exercised for the client’s benefit, free of compromising influences and loyalties. A trial lawyer who functions also as a trial witness is thought to be more easily impeachable for interest, and thus a less effective witness for the client (Code of Professional Responsibility EC 5-9). By the same token, the interest of the adversary in a fair trial is said to be threatened in that opposing counsel may be handicapped in challenging the credibility of a lawyer-witness who also appears as an advocate in the case (id.) Recognizing that the roles of an advocate and of a witness are inconsistent, and that it is from a public image point of view "unseemly” for a lawyer in a trial also to argue his own credibility as a witness, the Code of Professional Responsibility directs that a lawyer who ought to be called as a witness on behalf of his client shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial (Code of Professional Responsibility DR 5-102 [A]; DR 5-105 [D]; see also, Tru-Bite Labs v Ashman, 54 AD2d 345).
Considering all the significant interests to be balanced, it is particularly important that the Code of Professional Responsibility not be mechanically applied when disqualification is raised in litigation. The Code instead provides "guidance for the courts in determining whether a case would be tainted by *445 the participation of an attorney or a firm.” (Armstrong v McAlpin, 625 F2d 433, 446, n 26, vacated on other grounds 449 US 1106.) While in most instances the balance would be struck and the issue of disqualification finally resolved by the Appellate Division, in the circumstances presented no such taint or unfairness has been established by defendant, who bears the burden on this motion, and we therefore reverse and deny disqualification.
No one even suggests that Sassower will in any sense participate in trial of this action. While the concerns underlying law firm disqualification of course apply as well where the subject lawyer does not actually conduct the courtroom proceedings, still the actual connection between Sassower, the law firm and the trial cannot be ignored in evaluating whether the firm should be disqualified. Indeed, plaintiff repeatedly declares throughout its submissions that it does not intend to call Sassower as a witness at all. These declarations of intent by a sophisticated business plaintiff, as well as by its counsel, made after pleadings and limited discovery — with its trial strategy in mind — must be seriously regarded in determining what interest is being served by nonetheless disqualifying the law firm. True, such statements are not determinative of whether a witness "ought to be called”, but neither can an informed commercial plaintiff’s choice be ignored. Where such a client, in such circumstances, knowingly chooses to forego the testimony of its lawyer because it prefers to continue the representation of its law firm, it is curious indeed for the adversary to insist that the lawyer ought to be called as a witness for that client, and for a court on that basis to disqualify the firm (see, Greenebaum-Mountain Mtge. Co. v Pioneer Natl. Tit. Ins. Co., 421 F Supp 1348; Borman v Borman, 378 Mass 775, 393 NE2d 847; Wolfram, Modern Legal Ethics § 7.5, at 389).
Linked to these declarations by plaintiff is the fact that neither court below found Sassower’s testimony necessary to plaintiff’s case. Special Term found that Sassower had knowledge of the circumstances surrounding the deed of trust, but questioned the materiality of such knowledge to this action. The Appellate Division found that Sassower was intimately involved in the transactions in issue, including the flow of information to defendant relating to its consent. But whether a witness "ought” to testify is not alone determined by the fact that he has relevant knowledge or was involved in the transaction at issue. Disqualification may be required only *446 when it is likely that the testimony to be given by the witness is necessary (Foley & Co. v Vanderbilt, 523 F2d, at 1359, supra). Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence (see, Comden v Superior Ct., 20 Cal 3d 906, 576 P2d 971, cert denied 439 US 981; see also, Universal Athlete Sales Co. v American Gym, Recreational & Athletic Equip. Corp., 546 F2d 530, 538-539, n 21, cert denied 430 US 984; Foster Wheeler Corp. v Babcock & Wilcox Co., 440 F Supp 897, 903). Here, plaintiff did not dispute that Sassower participated in negotiations and communications with defendant. However, it was error to give no recognition to plaintiff’s contention that Sassower’s testimony was not material or even necessary, because there was no occasion to go behind the various agreements to determine their intent, the issues raised under the agreements being solely questions of law (see, Teitelbaum Holdings v Gold, 48 NY2d 51, 54); because Philip (not Herman) was the only person with firsthand knowledge of the conversations on which plaintiff’s case hinges; and because Herman’s testimony would at most be cumulative or relate only to matters of formality (see, Lefkowitz v Mr. Man, 111 AD2d 119, appeal dismissed 65 NY2d 1053).
These combined considerations, overlooked below, lead us to conclude that disqualification was improperly granted.
While defendant urges that, even if plaintiff does not call Herman Sassower it will, and his testimony will prejudice his client (see, Code of Professional Responsibility DR 5-102 [B]), the thrust of defendant’s motion as made was that the witnesses ought to be called on plaintiff’s behalf. Neither court below directly addressed the incidental issue whether Sassower’s testimony would give rise to a conflict between the firm and its client, but instead both courts permitted Bell Kalnick to continue to represent plaintiff until trial. We agree with the dissent at the Appellate Division that defendant’s papers were "vague and conclusory as to how plaintiff would be prejudiced if the defendant should call Herman Sassower.” (122 AD2d 676, 682; see also, Ocean-Clear, Inc. v Continental Cas. Co., 94 AD2d 717, 719.)
Accordingly, the order of the Appellate Division should be reversed, with costs, defendant’s motion to disqualify plain *447 tiffs counsel denied, and the certified question answered in the negative.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
Order reversed, etc.

.The lower court opinions deal only with Sassower, not Seldin. It is plain from the voluminous affidavits, briefs and other submissions on this motion that the motion centers on Sassower. Concluding that there is no need for disqualification on account of Sassower’s involvement, we too do not separately consider the issue whether disqualification is mandated by the undisputedly lesser role attributed to Seldin.

.We therefore need not address plaintiff’s argument, made in its submissions to this court, that Sassower remained a principal, and that as a party litigant the advocate-witness disqualification rules do not even apply to him (see, e.g., Bottaro v Hatton Assocs., 680 F2d 895).

.Vicarious disqualification, prescribed by DR 5-105 (D) without limita *444 tion, has been widely recognized as overbroad. In a comprehensive report on revising the Code of Professional Responsibility issued February 28, 1987, a Special Committee of the New York State Bar Association recommends that the Code be amended along the lines of rule 3.7 of the American Bar Association’s proposed Model Rules of Professional Conduct, limiting vicarious disqualification.

.There is considerable difference of opinion as to the underlying rationale for the rule. "The Code version of the advocate-witness rule has been defended on several grounds, not all of which are very convincing and not all of which consistently support the breadth of disqualification provided.” (Wolfram, Modern Legal Ethics § 7.5, at 377; see also, ABA/BNA, Lawyers’ Manual on Professional Conduct 61:503-61:506; and Enker, Rationale of the Rule that Forbids a Lawyer To Be Advocate and Witness in the Same Case, 1977 Am Bar Found Res J 455, 464, concluding that the rule is not for the protection of the client or the adversary, but the integrity of the profession.)