OPINION OF THE COURT
Paul G. Feinman, J.
The defendants’ motion to disqualify plaintiffs’ counsel is denied. The plaintiffs’ application for sanctions is also denied.
Plaintiffs commenced this action to recover fees allegedly owed pursuant to the terms of five separate contracts concerning performances arranged by defendant for plaintiff, a singer *263 known professionally as Amber. Plaintiffs allege breach of contract, unjust enrichment, unlicensed employment agent, and conversion. Defendant Nightlife Productions is a corporation established to procure live performance engagements for musicians, and to collect and forward the fees owed to the performers, deducting a commission. The individual defendants are employees of Nightlife Productions (hereinafter defendants) (see complaint and answer fifi 1-6).[1] Defendants advance three counterclaims alleging tortious interference with contract, defamation, and services rendered for which they have not been paid.
Defendants move to disqualify plaintiffs’ counsel, Mr. Collins, and the firm for which he is of counsel, Serling Rooks & Ferrara, LLP, alleging the firm and one of its associates, Theodore D. Weis, Esq., had previously had a three-year relationship with defendants which ended only shortly before this litigation was commenced (see, notice of motion, exhibit C), and that there is, at the very least, the appearance of impropriety in allowing Mr. Collins or the firm to continue representing plaintiff. They rely on the Code of Professional Responsibility sections addressing an attorney’s obligation to withdraw from representing a client in the same or a substantially related matter in which that client’s interests are materially adverse to the interests of a former client (Code of Professional Responsibility DR 5-108 [a] [l]-[2] [22 NYCRR 1200.27 (a) (l)-(2)]).[2]
There is an irrebuttable presumption that a lawyer who represents one client in an earlier matter and then attempts to *264 represent another in a substantially related matter which is adverse to the interests of the former client must be disqualified (Solow v Grace & Co., 83 NY2d 303, 313 [1994]; Code of Professional Responsibility DR 5-108 [a] [22 NYCRR 1200.27 (a)]). If an attorney in a firm is disqualified from representing a client, there is a rebuttable presumption that all the attorneys in the firm are disqualified (id.). Disqualification protects the client’s secrets and confidences by preventing even a possibility that they will be used in related litigation (Tekni-Plex v Meyner & Landis, 89 NY2d 123, 131 [1996]).
Although the Code of Professional Responsibility establishes important ethical standards for attorneys, when its principles are raised in the course of litigation, the courts are required to “use our judicial process to make our own decision in the interests of justice to all concerned” (S&S Hotel Ventures Ltd. Partnership v 777 S.H. Corp., 69 NY2d 437, 443 [1987]). The courts must balance the vital interest in avoiding even the appearance of impropriety with a concern for a party’s right to be represented by counsel of his or her choosing (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998]). In addition, there is a well-recognized “danger” that motions to disqualify can be tactical “derailment” weapons in litigation (id.; see Solow at 310). Therefore, to establish an irrebutable presumption of disqualification pursuant to DR 5-108 (a) (1), the movant must prove there was an attorney-client relationship between the moving party and opposing counsel, that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse (Jamaica Pub. Serv. Co. at 636). To establish disqualification pursuant to DR 5-108 (a) (2), the party seeking disqualification must also show a “reasonable probability” that confidential information will be disclosed during the course of litigation (id. at 637).
Defendants contend that, in this instance, all the problematic factors are present. They allege Mr. Weis advised and represented the corporation in various matters concerning the music industry, became “intimately familiar” with defendants’ business, learned “confidential information,” including advising *265 with regard to obtaining a license, and presumably conferred with other members of the law firm concerning their various business ventures (notice of motion, Brennan affidavit HH 2-3). Defendants concede neither Mr. Weis nor his law firm represented the corporation in the negotiation and execution of the contracts at issue, but argue that the work done by Mr. Weis and the firm involved facts and circumstances “substantially similar” to those between plaintiffs and defendants (notice of motion, Brennan affidavit U 6; Pick affidavit in reply H 2 [iii]).
Mr. Weis sharply disputes defendants’ characterization of their professional relationship. He states there was no ongoing relationship or exchange of confidential information, he was not retained by defendants, nor was the law firm, but rather he was hired to do certain discrete negotiations, he did not render legal advice concerning “numerous” industry matters or on general business matters, and was never asked nor provided legal advice concerning defendants’ efforts to obtain a license (Weis affidavit U 5). He characterizes the work he performed for defendants as “intermittent,” “limited” and “unrelated to the specific transactions” at issue (Weis affidavit H 11). For example, in about August 2001, he negotiated a contract on behalf of defendants for a promotional tour of Strictly Rhythm Records, for which he billed less than 15 hours (Weis affidavit 7-8; notice of motion, exhibits A, B).[3] In the summer of 2002, he was requested by defendants to draft a management agreement between it and a performer named Laleh. He affirms both contracts were “fairly rudimentary” and “typical” of the type of contract he negotiated for other, similar clients, and did not involve “proprietary business information” (Weis affidavit H 12). He visited defendants’ office only once to drop off a demo CD, and “almost all communications” were by telephone and fax (Weis affidavit U 9). Furthermore, in the course of his work for defendants, he never became aware that plaintiff and defendants had any dealings with each other (Weis affidavit 1113).
Plaintiff Cremers affirms she was a client of the firm prior to the time Mr. Weis negotiated the contracts at issue with *266 defendants (Weis affidavit 13), and that Joseph Serling, senior partner of Serling Rooks & Ferrara, has been her legal counsel and advisor for several years. She states neither he nor the firm was involved in her negotiations with defendants or in negotiating agreements for her performance engagements (Cremers affidavit 5, 8). Her attorney representing her in this action, Mr. Collins, is of counsel to Serling Rooks & Ferrara. He describes his relationship to the firm as essentially one of facilities-sharing, and states he acts independently of the firm as concerns his clients, keeping separate accounts, and collecting fees independently, although he is occasionally referred a litigation matter from the firm and he then bills the firm for his time (Collins affidavit 5-6). He affirms that “at no relevant time” did he act as legal counsel, or communicate with or give legal advice to any of the defendants, and that the contracts and transactions at issue were never a subject of communication between defendants and him (Collins affidavit mi 7, 10-id.
Defendants argue that doubts as to the existence of an asserted conflict of interest are to be resolved in favor of disqualification (see Flushing Sav. Bank v FSB Props., 105 AD2d 829, 830-831 [2d Dept 1984]). However, there is little persuasive merit to defendants’ argument that it is prejudiced because one of the bases for plaintiffs’ claim for damages is that defendants were not licensed and licensure was one of the issues about which it had consulted with Mr. Weis (notice of motion, Brennan affidavit 6). Mr. Weis denies ever discussing the issue with defendants. Moreover, plaintiff establishes that it is public knowledge, at least as of January 30, 2003, according to the State of New York Department of Labor, that neither the corporate defendant nor any of the individual defendants had been issued an employment agency license (affidavit in opposition, exhibit A). Thus, it cannot be said to be a matter of confidentiality.[4]
Defendants’ other contention, that the two[5] contracts negotiated by Mr. Weis involved “facts and circumstances” which are “substantially similar” to those in the instant matter and gave Mr. Weis and the law firm confidential information (notice of motion, Brennan affidavit 6), also fails to establish a reason *267 able probability of a conflict of interest. It is insufficient to offer “generalized assertions” of “access to confidences and secrets” (Jamaica Pub. Serv. Co., 92 NY2d at 638). Defendants must “at a minimum” provide sufficient information so that the court may determine whether there exists a “reasonable probability’ that DR 5-108 of the Code of Professional Responsibility would be violated (id.). They do not sufficiently rebut Mr. Weis’s affirmation that he did not need confidential or proprietary information in order to negotiate the two “typical” contracts he made for them.
Mr. Weis explains at the end of 2002, he became aware that plaintiff, the firm’s “long-time client,” was having problems with defendants and although he had not done any work for defendants in some time, he “promptly” contacted them to inform them he would no longer represent them (Weis affidavit 15). He avers he never discussed with plaintiff any issue pertaining to defendants (Weis affidavit 16). In the interest of avoiding an appearance of impropriety, he affirms that although he has no information with respect to the contracts at issue and no confidential information concerning defendants, he has not disclosed any such information to Mr. Collins or to the firm and “will not do so.” Moreover, he has disqualified himself from any individual participation in plaintiffs representation, and agrees not to discuss any aspect of this case with Mr. Collins or any member of Serling Rooks & Ferrara (Weis affidavit ]fl] 22-23).
When all is said and done, defendants proffer only speculation as to the existence of an actual conflict of interest (see, Olmoz v Town of Fishkill, 258 AD2d 447 [2d Dept 1999]). Nor is there a sufficient appearance of impropriety to warrant interfering with plaintiffs’ right to the counsel of their choosing. Accordingly, the defendants’ motion to disqualify plaintiffs counsel is denied.[6]
Plaintiffs’ application for costs, attorney’s fees and sanctions pursuant to 22 NYCRR 130-1.1 is denied. Although defendants’ disqualification motion has been denied, it cannot be deemed to have been frivolous. It is therefore ordered that defendants’ motion to disqualify plaintiffs’ attorney is denied; and it is further ordered that plaintiffs’ application for sanctions pursuant to 22 NYCRR 130-1 is denied.

. Neither plaintiffs nor defendants include copies of the complaint and answer in their papers. They are reminded that, pursuant to CPLR 2214 (c), each party is to furnish to the court all papers “necessary to the consideration of the questions involved.” Rather than delay resolution of this matter on the merits, the court has pulled the court file from the clerk’s office.
While this motion was sub judice, plaintiffs filed a second amended complaint on May 15, 2003, pursuant to a stipulation resolving a motion in the Supreme Court to remove this action to that court. The Supreme Court permitted the matter to be removed to that court for the purpose of increasing the amount of damages sought, and then directed that the matter be re-transferred to the Civil Court. Without expressing an opinion on the propriety of using this procedure to circumvent the monetary jurisdiction of the Civil Court, the court notes that the stipulation specifically provides that this motion would not be deemed withdrawn.

. DR 5-108 (a) (22 NYCRR 1200.27 [a]) of the Code of Professional Responsibility states:
“(a) Except [with the consent of a former client after full disclosure] a lawyer who has represented [the former] client in a matter shall not * * *:
*264 “(1) Thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client.
“(2) Use any confidences or secrets of the former client except as permitted by section 1200.19 (c) of this Part, or when the confidence or secret has become generally known.”

. Defendants include as part of exhibit B correspondence between Mr. Weis and Xtreme Records concerning a John Kano and Eddie Baez as part of its attempt to establish the depth of the professional relationship between it and Mr. Weis and Serling Rooks & Ferrara. Mr. Weis claims this is a mischaracterization, because Mr. Kano and Mr. Baez were actually his clients referred by defendant Brennan, and the subject matter of the letters was separate and apart from the matter he negotiated for defendants (Weis affidavit H10 n 2).

. Defendants admit in the answer that they are not licensed (see [f 24).

. Because defendants did not substantiate their claim that Mr. Weis negotiated “numerous” contracts on their behalf, although they had an opportunity to do so in their reply papers, the court finds that Mr. Weis worked on two separate agreements on defendants’ behalf.

. The court will not specifically address whether defendants’ motion was made in part or in whole as a tactic in the litigation process (cf., S&S Hotel Ventures Partnership v 777 S.H. Corp., 69 NY2d 437 [1987]).