**Andiero Partners, L.P. v Duggan**

2007 NY Slip Op 34617(U)

January 19, 2007

Surrogate's Court, New York County

Docket Number: File No. 1147/2000

Judge: Anderson, S.

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SURROGATE'S COURT : NEW YORK COUNTY
-------------------------------------X
Andiero Partners, L.P.,

                    Plaintiff,

          -against-                        File No. 1147/2000

GLORIA DUGGAN, both individually and
in her capacity as executrix of the
Estate of Robert E. Kelly,

                    Defendant
-------------------------------------X

R O T H , S .

In an action transferred from the Supreme Court relating to the estate of Robert E. Kelly, plaintiff Andiero Partners, L.P. (the "partnership"), seeks partial summary judgment on certain of its claims against Gloria Duggan, individually and as executrix of decedent's estate, concerning a $500,000 insurance policy on decedent's life. Duggan cross-moves for various relief, including summary judgment on the claims against her individually and the disqualification of the law firm representing the partnership.

The relevant facts are as follows. Testator died on March 12, 2000, at the age of 62, survived by three children. Under his will, which was admitted to probate, Mr. Kelly left $100,000 to each of his children and the residue to Duggan, who was named executrix.

At the time of his death, decedent was the general partner of Andiero, a limited partnership that he established in 1978 for the purpose of investing in securities. The record establishes that, for at least ten years before decedent died, the partnership was the owner and designated beneficiary of a $500,000 insurance policy on his life, paid the annual premiums for the policy and touted to prospective investors the existence of such policy (without identifying it specifically) in Confidential Offering Memoranda dated December 1997 and June 1998.

The reason for the initial purchase of the policy is not clear from the record. Based on the reference to an insurance policy on decedent's life in the Confidential Offering Memoranda, it would appear that the policy was "key man" insurance intended to protect the partnership in the event of the death of the general partner. According to Duggan, though, the policy was intended to secure any debts that decedent might have owed to the partnership as a result of advances he would often take against future compensation. It is observed in this regard, however, that, as the owner and designated beneficiary of the policy, the partnership would have had no legal obligation to use the policy's proceeds to satisfy the general

2

[* 2]

partner's indebtedness to it absent an agreement (to which Duggan makes no reference).

Nonetheless, it is undisputed that, on June 7, 1999, shortly after he had been diagnosed with pancreatic cancer, decedent, in his capacity as general partner, assigned ownership of the policy to himself individually. Upon such transfer, decedent personally assumed payment of the policy's premiums and then changed the designation of beneficiary from the partnership to Duggan.

After decedent's death, Duggan in her individual capacity collected the proceeds of the policy as beneficiary. The partnership, claiming that decedent's transfer of the policy had been improper, commenced an action against Duggan as representative of the estate (on the theory that decedent's transfer of the policy was a breach of fiduciary duty and an act of conversion) and against Duggan individually (on the theory that she had been unjustly enriched by the policy's proceeds). The complaint, filed in Supreme Court, New York County, also included various other claims against Duggan (as executrix) that are unrelated to the insurance policy and are not at issue on these motions.

The partnership obtained a temporary restraining order in

3

the Supreme Court prohibiting any disposition of the policy's proceeds. Eventually a consent order was signed providing for the proceeds of the policy, less $63,161 that Duggan acknowledged she had spent (before the restraining order was issued), to remain under a restraint pending the outcome of the proceeding.

Duggan, in her capacity as executrix, then asked this court to consent to the transfer of the action (SCPA 501[1]). As part of the same motion, Duggan also requested the "issuance of citation in a SCPA 2103 proceeding for turnover," alleging that the partnership was withholding from the estate the proceeds of an IRA and pension plan of which decedent had designated the estate the beneficiary. Although the court consented to the transfer of the action, because Duggan's request by motion for the issuance of a citation was procedurally defective and did not initiate a discovery proceeding, the decision noted that, notwithstanding Duggan's allegations regarding the IRA and the pension plan, "she had not yet commenced" such a proceeding (Matter of Kelly, NYLJ, Mar. 14, 2002, at 21, col 3). Accordingly, no citation issued.

Thereafter, the partnership's action was transferred to this court (Andiero Partners, L.P. v Duggan, Sup. Ct., NY

4

County, Mar. 18, 2002, Kahn, J., Index No. 601227/01). Duggan then answered the complaint (in her fiduciary and individual capacities) and, as relevant for present purposes, she interposed a counterclaim as executrix, in essence repeating the allegations that the partnership was withholding from the estate the proceeds of the IRA and pension plan.

Although it is not clear from Duggan's counterclaim, the record shows that the IRA and pension plan held limited partnership interests that were liquidated after decedent's death and placed in a segregated account under the partnership's control. Why the partnership did not immediately remit such funds to the custodian of the IRA and trustee of the pension plan cannot be determined from the record. What can be determined, however, is that Duggan, as executrix, requested that the funds be turned over to the estate, but the partnership, apparently concerned about its liability as stakeholder, refused, absent some confirmation from the fiduciaries of the pension plan and IRA that the estate was, in fact, the designated beneficiary.

After unsuccessful settlement negotiations, the partnership made the instant motion for partial summary judgment on four of its six causes of action relating to the insurance policy.

5

[* 5]

Specifically, the partnership seeks summary judgment on 1) its first cause of action against Duggan (individually and as fiduciary), which cites no theory for recovery, but appears to be based on the wrongful conduct alleged in the complaint, 2) its third cause of action against Duggan as executrix, which alleges that decedent breached his fiduciary duty, 3) its fourth cause of action against Duggan individually, which alleges that she has been unjustly enriched by the policy's proceeds and 4) its fifth cause of action, also against Duggan individually, which seeks an accounting, the imposition of a constructive trust and the appointment of a receiver, all with respect to the proceeds of the policy.

Duggan has opposed the motion and cross-moved for various relief. In her individual capacity, she seeks summary judgment dismissing the claims against her (all of which relate to the insurance policy) or, in the alternative, an order compelling the partnership to comply with outstanding discovery demands, and the disqualification of the partnership's counsel, Beerman & Deutsch, LLP, based upon a purported conflict of interest and the advocate witness disqualification rules. As executrix, she seeks summary judgment relating to the pension plan and IRA.

With this background, we turn to the partnership's motion

6

[* 6]

for summary judgment. It is said that summary judgment is a drastic remedy and should be granted only when it is clear that no material issues of fact exist (see e.g. Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223; Andre v Pomeroy, 35 NY2d 361). The party seeking summary judgment must present sufficient evidence to demonstrate the absence of any material issues of fact (see e.g. Alvarez v Prospect Hosp., 68 NY2d 320; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851). However, once the requisite proof has been submitted, the burden is on the party opposing summary judgment either to come forward with proof, in evidentiary form, sufficient to show that movant is not entitled to judgment as a matter of law or to demonstrate an acceptable excuse for his failure to tender such proof (Zuckerman v City of New York, 49 NY2d 557).

The primary basis for the partnership's motion is its assertion that, as a matter of law, decedent breached his fiduciary obligations to his limited partners when, in his capacity as general partner, he assigned ownership of the policy at issue to himself individually and thereafter changed the beneficiary designation to Duggan. According to the partnership, decedent not only deprived his partners of the protection of an insurance policy, but did so in the knowledge

7

that he was seriously ill, i.e., that the policy could not be replaced and likely would bear fruit for its beneficiary in the near future. Duggan then benefited from decedent's wrongdoing by collecting the proceeds of the policy.

The record is clear, however, that, prior to seeking summary judgment, the partnership had not responded to Duggan's discovery demands relating to the insurance policy. Moreover, the partnership concedes that at the time the motion was made, the parties had agreed to stay discovery pending settlement negotiations. The partnership attempts to explain the timing of the motion by asserting that it was prompted by Duggan's failure to negotiate in good faith. Even assuming, however, that Duggan had some duty to negotiate in a certain way and violated that duty, the partnership provides no authority for the proposition that such a fact would terminate Duggan's right to discovery.

Duggan argues that, under these circumstances, summary judgment is premature, citing CPLR 3212(f), which provides that "[s]hould it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot be stated, the court may deny the motion . . . ." Since, contrary to the partnership's contention, this is not a situation where the party availing itself of CPLR 3212(f) "has

8

failed to ascertain the facts due to its own inaction" (Meath v Mishrick, 68 NY2d 992, 994) the issue is simply whether Duggan has met the requirements of CPLR 3212(f).

In such regard, it is observed initially that the papers submitted by Duggan (both individually and as executrix) fail in many respects to address the relevant issues. For example, a significant portion of such papers is devoted to arguments that appear to be related only to the partnership's second cause of action for conversion and, specifically, whether a term life insurance policy, which by its nature has no cash surrender value, can be the subject of a conversion claim. However, since the partnership does not seek summary judgment on that claim, Duggan's extensive arguments concerning the need for discovery in such connection are irrelevant.

Nonetheless, Duggan has shown a sufficient need for discovery concerning the insurance policy and the circumstances of its transfer in relation to the breach of fiduciary claim. At the very least, Duggan is entitled to discovery to prove her contention (which the partnership disputes) that decedent transferred the policy in good faith with "full knowledge" of the partnership. One argument made by the partnership in this

9

regard requires brief discussion and that is the claim that Duggan cannot, as a matter of law, show that all of the limited partners consented to the transfer because she, as a limited partner herself, admits that decedent never obtained her consent before he made the transfer. However, because the transfer benefits Duggan, her consent to the transaction can be presumed (see Matter of Kelsey, 29 AD2d 450, affd 26 NY2d 792) and is confirmed in any event by her position in this lawsuit. The issue is whether the other limited partners consented and, as to that issue, there has been no discovery.

Moreover, although Duggan misapprehends the relevance of the business judgment rule to this case (see e.g. S.H. and Helen R. Scheuer Family Foundation, Inc. v 61 Assocs., 179 AD2d 65 [noting that the business judgment rule is inapplicable where there exists a potential for self-interest]), she nevertheless has the right to try to prove that the transaction was in any event fair and proper (see e.g Wolf v Rand, 258 AD2d 401 [where the business judgment rule does not apply and a transaction is therefore subject to judicial scrutiny, the burden is on the fiduciary to show the propriety of the transaction]; see also Levine v Levine, 184 AD2d 53; Limmer v Medallion Group, Inc., 75 AD2d 299). And again, since Duggan has not had discovery

10

concerning the insurance policy, she has not had the opportunity to gather whatever evidence she can in that regard.

Whether after discovery Duggan will be able to establish that there exists a genuine factual issue concerning the propriety of decedent's conduct is questionable. Nevertheless, in considering a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party who must be afforded the benefit of every reasonable inference (see e.g. <u>Dauman Displays, Inc. v Masturzo</u>, 168 AD2d 204). And, in this connection (particularly given the partnership's decision to short-circuit discovery and move for summary judgment), it cannot be said based on the record that, as a matter of law, there are no circumstances under which Duggan could create a factual issue concerning the propriety of the policy's transfer.

Accordingly, the partnership's motion for summary judgment against Duggan as executrix is denied without prejudice. Because the partnership's motion for summary judgment against Duggan individually is also predicated on a determination that decedent improperly assigned the insurance policy to himself, such motion is also denied without prejudice.

As for Duggan's cross-motion for summary judgment

11

dismissing the causes of action against her in her individual capacity, she has failed to meet her threshold burden on such motion, namely to make a prima facie showing of entitlement to judgment as a matter of law (<u>Alvarez v Prospect Hosp.</u>, 68 NY2d 320, <u>supra</u>) and thus her motion is also denied. However, for the reasons stated above, Duggan's cross-motion to compel responses to her discovery requests is granted to the extent that the partnership is directed to respond to all outstanding discovery demands as though they had been made on the date of service of the notice of entry of this decision.

We turn next to Duggan's application (in her fiduciary capacity) concerning the proceeds of decedent's IRA and pension plan. As noted above, Duggan's unsuccessful attempt to commence a turnover proceeding by motion was specifically addressed by the court in its prior decision (<u>Matter of Kelly</u>, NYLJ, Mar. 14, 2002, at 21, col 3, <u>supra</u>). Nevertheless, she not only makes repeated references to the "existing SCPA 2103 Turnover Proceeding," but also seeks summary judgment with respect to it.

The only claims concerning the IRA and pension plan that are properly before the court are raised in Duggan's counterclaim and are not even mentioned in her motion. Such counterclaim, however, is not the proper subject of a summary

12

judgment motion at this juncture for numerous reasons, including that it appears that no responsive pleading has been filed by the partnership (see CPLR 3212) and that the fiduciaries of the IRA and pension plan were never joined as parties. It is also observed that, even if the motion were not deficient as discussed above, the evidence presented by Duggan fails to support a summary determination that the estate is entitled to the funds at issue. For these reasons, the motion is denied.

Finally, we turn to Duggan's motion for disqualification of the law firm (Beerman & Deutsch, LLP) that represents the partnership in this action. The basis for the motion is twofold. First, Duggan asserts that the firm has a conflict of interest resulting from its representation of the partnership and the estate planning advice its predecessor firm provided to decedent, which is alleged to have included advice about the transfer of the insurance policy at issue. Second, she claims disqualification is appropriate because one or more attorneys at the firm will be called upon to give testimony at trial.

It is undisputed that Stephen H. Deutsch, a current member of the law firm, provided legal services to the partnership while decedent was the general partner. It is also undisputed that he provided estate planning advice to decedent around the

13

[* 13]

time that decedent assigned ownership of the policy to himself. In this connection, the record includes a letter to decedent from Mr. Deutsch, dated July 12, 1999, confirming the retention of his prior firm to offer "estate planning and other recommendations." Such letter makes extensive recommendations concerning the disposition of decedent's assets upon his death. Of significance here is the discussion of a $500,000 life insurance policy, which the attorney recommended that decedent place in an insurance trust for the life benefit of Duggan with remainder to his children. Such policy would appear to be the insurance policy at issue. However, it is observed that the letter makes no mention of decedent's assignment of the policy to himself approximately one month earlier.

Duggan claims that the letter establishes that the law firm (comprised of three attorneys, two of whom were members of Mr. Deutsch's prior firm) has "represented parties and/or given conflicting advice on adverse sides" of the central issue here, namely the transfer of the insurance policy. Moreover, she asserts, even if such were not the case, Mr. Deutsch and another attorney at the firm, Carol Sanginario, who allegedly has information pertinent to the proceeding, likely will be called as witnesses at trial under circumstances where the interests of

14

[* 14]

their current client will be clearly adverse to those of their former client.

The partnership, for its part, does not offer an affidavit from Mr. Deutsch or anyone else from the firm with personal knowledge of the circumstances of the firm's representation of decedent. Indeed, the partnership's only submission on this issue is a memorandum of law in which it concedes that the attorney represented decedent, but claims in conclusory fashion that the estate planning advice was not substantially related to the current dispute and thus is not, in and of itself, sufficient to require disqualification.

The determination of a motion to disqualify rests within the sound discretion of the court (see e.g. Nationwide Assoc., Inc. v Targee Street Internal Medicine Group, P.C., 303 AD2d 728). In exercising such discretion, however, the court must be mindful that a party's right to be represented by the counsel of his or her choice is a valuable substantive interest which should not be hindered absent a clear showing that disqualification is warranted (see e.g. S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp., 69 NY2d 437; Horn v Municipal Info. Svcs, Inc., 282 AD2d 712). The movant thus bears the burden on such motion (S & S Hotel Ventures Ltd., 69 NY2d 437,

15

[* 15]

supra). However, within this framework, it is also recognized that the court has an obligation to protect the integrity of the process by avoiding litigation tainted by unwaivable conflicts of interest (see id.). Thus, if the record on a motion to disqualify is sufficient to raise substantial issues of fact as to whether there is a conflict or impropriety requiring disqualification, a hearing should be held prior to deciding the motion (see e.g. Marcus Borg Rosenberg & Diamond v Gilbert, Segall & Young L.L.P., 280 AD2d 261; Lightning Park, Inc. v Wise Lerman & Katz, P.C., 197 AD2d 52).

With respect to that part of Duggan's motion which seeks disqualification on the ground that one or more attorneys at the firm will be called upon to give testimony at trial (see Code of Professional Responsibility DR 5-102 [22 NYCRR § 1200.21]), such motion is denied without prejudice. A party seeking disqualification on this ground must show, among other things, that the testimony will be "necessary" (S & S Hotel Ventures Ltd., 69 NY2d 437, supra), which requires more than a demonstration that the attorney has knowledge of, or involvement in, the transaction at issue. The court must examine "such factors as the significance of the matters, weight of the testimony, and availability of other evidence" (id. at 446).

16

[* 16]

Here, Duggan's assertion that she plans to depose and then call as a trial witness one or more of the attorneys at Beerman & Deutsch because they have "information or records pertinent to the trial of this action" is plainly insufficient to warrant disqualification at this time.

We thus turn to that portion of the motion seeking disqualification based upon an alleged conflict of interest arising out of Mr. Deutsch's prior representation of decedent (See Code of Professional Responsibility 5-108 [22 NYCRR § 1200.27]). Initially, however, a threshold issue not raised by the parties should be addressed, namely Duggan's standing to seek such relief, since she has brought the motion in her individual capacity and the purported conflict arises out of Mr. Deutsch's representation of decedent rather than Duggan herself.

There is considerable authority for the proposition that a party has no standing to seek the disqualification of counsel with whom he has had no relationship (see e.g. Develop Don't Destroy v Empire State Dev. Corp., 31 AD3d 144; Rowley v Waterfront Airways, Inc., 113 AD2d 926). However, Duggan, as beneficiary of the insurance policy, arguably shares with decedent an identity of interest in connection with such policy and therefore may have a cognizable stake in such motion (see

17

<u>Booth v Continental Ins. Co.</u>, 167 Misc 2d 429). And, in any event, even if Duggan has no standing to make such a motion, courts have the authority to disqualify counsel sua sponte if counsel's continuing participation in the proceeding would be tainted with a conflict or impropriety that is profound enough to be unwaivable (<u>see</u> <u>e.g.</u> <u>Rowe v DeJesus</u>, 106 AD2d 284; <u>Flushing Savings Bank v FSB Properties, Inc.</u>, 105 AD2d 829; <u>Booth v Continental Ins. Co.</u>, 167 Misc 2d 429, <u>supra</u>).

Here, the allegations concerning the nature of Mr. Deutsch's prior representation of decedent and its relationship to the current litigation are sufficiently serious to warrant a sua sponte inquiry (<u>see</u> <u>Matter of Maurer</u>, NYLJ, Dec. 12, 2006, at 32, col 4). That Duggan did not bring the motion immediately and, instead, attempted first to negotiate a settlement does not negate this fact. Although the letter upon which Duggan bases her motion does not establish that Mr. Deutsch, as part of his estate planning advice, counseled decedent regarding the transfer of ownership of the insurance policy from the partnership to himself, it does raise material questions about the nature and scope of his representation as it relates to the current litigation that require further examination. Given these circumstances and the court's

18

obligation to ensure the integrity of its proceedings, an evidentiary hearing is warranted (see Lightning Park, Inc. v Wise Lerman & Katz, P.C., 197 AD2d 52, supra). The parties are thus directed to appear for a pre-hearing conference on February 20, 2007, at 2:00 p.m. in Room 401 of this court.

This decision constitutes the order of the court.

/s/ RRR

S U R R O G A T E

Dated: January 19, 2007