Van Ryn v Goland (2020 NY Slip Op 07263)





Van Ryn v Goland


2020 NY Slip Op 07263


Decided on December 3, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 3, 2020

530037

[*1]Paul W. Van Ryn, Appellant,
v
Lois Goland, Respondent.

Calendar Date: October 14, 2020

Before: Garry, P.J., Egan Jr., Lynch, Clark and Colangelo, JJ.


Paul W. Van Ryn, Delmar, appellant pro se.
Tully Rinckey PLLC, Albany (Christine F. Redfield of counsel), for respondent.



Garry, P.J.
Appeals (1) from an order of the Supreme Court (Platkin, J.), entered August 27, 2019 in Albany County, which, among other things, denied plaintiff's motion to quash a subpoena duces tecum, and (2) from an order of said court, entered September 18, 2019 in Albany County, which quashed a subpoena ad testificandum issued by plaintiff.
Plaintiff and defendant were divorced in 2009. Their separation agreement, incorporated but not merged into the judgment of divorce, provided that plaintiff would receive a Majauskas share in defendant's pension. Following defendant's 2015 retirement, the parties were unable to agree on the amount that plaintiff should receive, and he commenced this action. In December 2017, after extended negotiations, the parties executed a settlement agreement (hereinafter the 2017 agreement), drafted by defendant's counsel, providing that plaintiff would receive a 50 percent Majauskas share in defendant's pension and setting forth a method for calculating this amount. After both parties had executed the 2017 agreement, plaintiff claimed that the calculation method described therein entitled him to a 66 percent share of the pension. Defendant asserted that the parties' true intent was for plaintiff to receive a 33 percent share and that the language on which plaintiff relied arose from a drafting error by her counsel. Plaintiff moved for an order enforcing his interpretation of the 2017 agreement. Defendant opposed and cross-moved for an order confirming her interpretation.
In November 2018, at the conclusion of oral argument, Supreme Court ruled from the bench that the 2017 agreement was ambiguous and that an evidentiary hearing was required to receive extrinsic evidence germane to the issues of mistake and the parties' intentions, including testimony from the parties and their respective counsel. Thereafter, defendant submitted a proposed subpoena duces tecum (hereinafter the January 2019 subpoena) seeking to compel plaintiff's counsel to testify at the evidentiary hearing and to produce all communications between plaintiff and his counsel related to the 2017 agreement. In January 2019, the court issued a letter decision finding that plaintiff had waived the attorney-client privilege as to these matters, and therefore signed the January 2019 subpoena, with certain limitations. Plaintiff's counsel then withdrew from the representation, and plaintiff — an experienced matrimonial attorney — thereafter represented himself.
As pertinent here, plaintiff thereafter moved for reargument of the November 2018 bench decision, the January 2019 letter decision and the January 2019 subpoena itself. He also moved for orders quashing the January 2019 subpoena and disqualifying defendant's counsel. Defendant opposed these motions.[FN1] The court issued an order (hereinafter the August 2019 order) that partially granted plaintiff's motion for reargument by imposing further limits on the January 2019 subpoena, and denied the remainder of that motion and the other motions. Plaintiff then served Supreme Court with a subpoena ad testificandum (hereinafter the September 2019 subpoena) commanding Supreme Court Justice Richard M. Platkin to appear at the evidentiary hearing as a witness on plaintiff's behalf. Acting sua sponte, the court issued an order (hereinafter the September 2019 order) quashing this subpoena. Plaintiff appeals from the August 2019 and September 2019 orders.
It is well established that no appeal lies from the denial of a motion for reargument (see CPLR 5701 [a] [2] [viii]; Matter of Reed v Annucci, 182 AD3d 883, 884 n [2020], lv denied 35 NY3d 908 [2020], lv dismissed and denied 35 NY3d 1075 [2020]; Budin v Davis, 172 AD3d 1676, 1679 [2019]; Abele Tractor & Equip. Co., Inc. v Schaeffer, 167 AD3d 1256, 1260 [2018]). Where, as here, a court considers the merits of a motion for reargument in the course of denying the motion, this Court may "deem the court to have granted reargument and adhered to its prior decision" and, thus, permit appellate review (Cloke v Findlan, 165 AD3d 1545, 1546-1547 [2018] [internal quotation marks and citation omitted]; see CPLR 5701 [a] [2] [viii]; Rodriguez v Jacoby & Meyers, LLP, 126 AD3d 1183, 1184 [2015], lv denied 25 NY3d 912 [2015]). That procedure is not available here, however; the November 2018 bench decision, the January 2019 letter decision and the January 2019 subpoena, challenged in plaintiff's reargument motion, were not themselves appealable. Significantly, plaintiff moved in this Court in March 2019 for permission to appeal from the same underlying decisions, and this Court denied the motion (2019 NY Slip Op 67811[U] [2019]; see CPLR 5701 [c]). The November 2018 bench decision was not appealable because it was not reduced to an order (see CPLR 5512 [a]; 5701 [a] [2]; [c]; Howell v State of New York, 169 AD3d 1208, 1209 n 1 [2019], lv denied 33 NY3d 907 [2019]; Matter of Marc D. v Fulton County Dept. of Social Servs., 79 AD3d 1534, 1535 [2010]). For similar reasons, no appeal could be taken from Supreme Court's January 2019 letter decision (see Gunn v Palmieri, 86 NY2d 830, 830 [1995]; Matter of Darrow v Darrow, 106 AD3d 1388, 1390 n 5 [2013]). Likewise, the January 2019 subpoena was not appealable (see CPLR 5512 [a]; Matter of Boikess v Aspland, 24 NY2d 136, 138-139 [1969]; Matter of Zelter v Nash, 285 App Div 1214, 1214 [1955]). Accordingly, none of plaintiff's arguments challenging the denial of his motion for reargument are properly before this Court, and they will not be addressed.[FN2]
Further, to the extent that plaintiff's notice of appeal from the August 2019 order purports to seek appellate review of "decisions and orders [that] denied a [m]otion to [s]ettle/[m]otion for [s]ummary [j]udgment interpreting [the 2017 agreement]," our record does not reveal that any such decisions or orders have been issued. Instead, and critically, Supreme Court has not yet decided the parties' motion and cross motion to confirm and enforce their respective interpretations of the 2017 agreement; this determination will not be made until after the evidentiary hearing. As such, plaintiff's arguments regarding the issues raised in the motion and cross motion — including such matters as mistake, bad faith, the manner in which the 2017 agreement should be interpreted and the share of defendant's pension that plaintiff should receive — are premature and will not be addressed. Thus, the only matters that are properly before this Court upon this appeal are whether Supreme Court properly denied plaintiff's motions to quash the January 2019 subpoena and to disqualify defendant's counsel, and whether the court properly quashed the September 2019 subpoena.
Turning first to the denial of plaintiff's motion to quash the January 2019 subpoena, this relief is granted "only where the futility of the process to uncover anything legitimate is inevitable or obvious or where the information sought is utterly irrelevant to any proper inquiry" (Matter of Board of Educ. of the City Sch. Dist. of the City of N.Y. v New York State Dept. of Educ., 182 AD3d 664, 665-666 [2020] [internal quotation marks and citations omitted]). It was plaintiff's burden to establish the existence of such circumstances (see Matter of Kapon v Koch, 23 NY3d 32, 39 [2014]). He sought to do so by arguing that his communications with his former counsel were privileged and that no basis existed to abrogate the privilege. However, a client "who permits his [or her] attorney to testify regarding [a] matter is deemed to have impliedly waived the attorney-client privilege" (Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [1983] [internal citation omitted]).
Here, plaintiff's former counsel submitted two sworn affidavits in support of plaintiff's motion for enforcement of the 2017 agreement in which, among other things, he described his opinions and those expressed to him by plaintiff about certain differences between that agreement and the parties' prior negotiations. Plaintiff's former counsel averred that he and plaintiff "immediately recognized the insertion of new . . . language" that differed from the parties' previous negotiations, stated that he advised plaintiff to sign the 2017 agreement, described the reasons expressed by plaintiff for doing so — including the fact that plaintiff would receive a larger share of defendant's pension than had previously been discussed — and denied that he or plaintiff acted in bad faith. We recognize that these communications between plaintiff and his former counsel were privileged, as they were "made for the purpose of obtaining or facilitating legal advice" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623 [2016]; see CPLR 4503 [a] [1]). We find, however, that plaintiff waived that privilege when he allowed his counsel to act on his behalf by selectively and voluntarily disclosing some of their communications (see Metropolitan Bridge & Scaffolds Corp. v New York City Hous. Auth., 168 AD3d 569, 572 [2019]; Hudson Val. Mar., Inc. v Town of Cortlandt, 30 AD3d 378, 379 [2006]; Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d at 835).
We further note that "waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information" (Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust, 43 AD3d 56, 63-64 [2007]). Here, the statements by plaintiff's former counsel about plaintiff's awareness of the effect of the contested provision and his alleged good faith in executing the 2017 agreement placed the questions of mistake and good faith in issue, revealing that plaintiff "asserted a claim or defense that he intend[ed] to prove by use of the privileged materials" (id. at 64 [internal quotation marks and citations omitted]; see New York TRW Tit. Ins. v Wade's Can. Inn & Cocktail Lounge, 225 AD2d 863, 864 [1996]). Finally, "it cannot be said that the information sought [from plaintiff's former counsel] is utterly irrelevant" (Matter of Board of Educ. of the City Sch. Dist. of the City of N.Y. v New York State Dept. of Educ., 182 AD3d at 666 [internal quotation marks and [*2]citations omitted]). Accordingly, Supreme Court did not err in denying plaintiff's motion to quash the January 2019 subpoena on the ground that plaintiff had waived the attorney-client privilege.[FN3]
Next, plaintiff contends that Supreme Court should have granted his motion to disqualify defendant's counsel. "When considering a motion to disqualify counsel, the court must consider the totality of the circumstances and carefully balance the right of a party to be represented by counsel of his or her choosing against the other party's right to be free from possible prejudice due to the questioned representation" (Lilley v Greene Cent. Sch. Dist., 168 AD3d 1180, 1183 [2019] [internal quotation marks and citations omitted]). First addressing plaintiff's allegation that there is a conflict of interest, "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [a] [2]; see Greene v Greene, 47 NY2d 447, 452 [1979]). Plaintiff argues that the interests of defendant and her counsel are adverse and require disqualification, because defendant's counsel is allegedly at risk of personal liability to defendant for malpractice arising out of her acknowledged error in drafting the 2017 agreement. Defendant — an attorney — averred by affidavit that she understood the pertinent principles of ethics and conflict. She stated that her counsel had fully advised her of the alleged drafting error and the potential for a future malpractice claim, that her counsel had recommended that defendant obtain independent legal representation, and that defendant had rejected this advice because she wished to continue to be represented by the counsel of her choice.
Plaintiff asserts that defendant's preference to retain her counsel is immaterial because their alleged conflict of interest is "nonconsentable" (Jay Deitz & Assoc. of Nassau County, Ltd. v Breslow & Walker, LLP, 153 AD3d 503, 505 [2017] [internal quotation marks and citation omitted], lv denied 30 NY3d 907 [2017]; compare Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [b]; Bynum v Camp Bisco, LLC, 151 AD3d 1427, 1429 [2017]). However, we need not determine whether plaintiff is correct in this claim; we agree with Supreme Court that plaintiff failed in the first instance to meet his burden to establish that there is a risk of any significance that defendant and her counsel have adverse interests. Plaintiff's argument that malpractice liability may arise if he prevails in this litigation necessarily leads to the conclusion that defendant and her counsel share an identical interest in advocating for defendant to prevail. Further, plaintiff's assertion that defendant's counsel will have personal liability for an eventual malpractice claim is entirely conjectural, as this can arise only if plaintiff first prevails in this litigation, defendant then prevails in a subsequent malpractice action and, finally, defense counsel's malpractice carrier disclaims coverage for reasons that plaintiff speculates [*3]may occur. Accordingly, plaintiff has not shown "a significant risk" of adversity between the interests of defendant and her counsel, and nothing in the totality of the circumstances calls for the harsh sanction of disqualifying the counsel of defendant's choice (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [a] [2]; see Biscone v Carnevale, 186 AD2d 942, 943-944 [1992]; compare Greene v Greene, 47 NY2d at 452-453).
We likewise find no merit in plaintiff's assertion that defendant's counsel must be disqualified because her testimony on the issue of bad faith will be required at the evidentiary hearing. "To succeed on a motion to disqualify counsel on the ground that he or she may be called as a witness, the movant has the burden of demonstrating that the testimony of the opposing party's counsel is necessary to his or her case, and that such testimony would be prejudicial to the opposing party" (Baram v Baram, 154 AD3d 912, 913 [2017] [citations omitted]; see Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7). This rule "provide[s] guidance, not binding authority, for courts in determining whether a party's law firm, at its adversary's instance, should be disqualified during litigation" (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 440 [1987]). Here, plaintiff contends that defendant's counsel is the only witness who will be able to testify about certain statements related to the 2017 agreement that were allegedly made to her by plaintiff's former counsel at a December 2017 settlement conference. Under the January 2019 subpoena, however, testimony on this issue will be available from plaintiff's former counsel himself, the source of the remarks; thus, plaintiff has not established that the testimony of defendant's counsel will be "strictly necessary" to his case (id. at 446; compare Baram v Baram, 154 AD3d at 913; Skiff-Murray v Murray, 3 AD3d 610, 611 [2004]). Further, plaintiff has not met the second prong of the test; he has not demonstrated that any "taint or unfairness" toward defendant will result if defendant's counsel testifies about the disputed remarks (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d at 445; see Levy v 42 Dune Rd., LLC, 162 AD3d 651, 653 [2018]).
Finally, we reject plaintiff's contention that Supreme Court erred in quashing the September 2019 subpoena. Plaintiff asserts that the testimony of Justice Platkin will be required, as he was present at conferences held in December 2017 and May 2018, when certain remarks and representations were allegedly made. However, "[t]he disqualification of [t]rial [j]udges as witnesses is absolute, so far as the trials in which they preside are concerned" (Jerome Prince, Richardson on Evidence § 6-111 [Farrell 11th ed 1995]; see People v Dohring, 59 NY 374, 378 [1874]; Matter of Sheen, 145 Misc 2d 920, 921 [Sur Ct, Bronx County 1989]). A judge shall disqualify himself or herself from presiding over a matter if "the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has personal knowledge of disputed evidentiary facts concerning the proceeding" (Rules Governing Judicial Conduct [22 NYCRR] § 100.3 [E] [1] [a] [ii]). Here, however, plaintiff did not move for recusal.[FN4] "The mere service of a witness subpoena . . . does not in and of itself disqualify a judge from [*4]continuing to preside over the action. . . . [A] claim that the judge is a material witness must be made in good faith and must be based on fact" (Oakes v Muka, 56 AD3d 1057, 1059 [2008] [internal quotation marks, brackets and citation omitted]). Moreover, "[p]ublic policy encourages the settlement of lawsuits and directs that [j]udges . . . take part in settlement conferences without fear that they may be called to testify about materials or information obtained during these private conferences" (Baghoomian v Basquiat, 167 AD2d 124, 125 [1990]).[FN5]
Here, plaintiff has not established a good faith factual basis for overriding the prohibition against requiring judges to testify in the same matters over which they are presiding, nor has he shown that Justice Platkin must be disqualified to permit his testimony. Plaintiff's former counsel and defendant's counsel also witnessed the disputed events, and plaintiff has not shown that Justice Platkin has any knowledge that was not available to them (compare People v Gentile, 96 AD2d 950, 951-952 [1983]; People v Rodriguez, 14 AD2d 917, 918 [1961]). Considering all of the circumstances, including assurances of impartiality made by Justice Platkin to the parties, we find no error in the September 2019 order quashing the subpoena (see Oakes v Muka, 56 AD3d at 1059; People v Rodriguez, 14 AD2d at 918).
Egan Jr., Lynch, Clark and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, with costs.



Footnotes

Footnote 1: Plaintiff also moved for permission to engage in disclosure, and defendant cross-moved for an order placing maintenance payments in escrow. Supreme Court denied the motion and the cross motion. As plaintiff does not challenge the denial of his disclosure motion upon this appeal, we deem any related issues to be abandoned (see Hockett v City of Ithaca, 149 AD3d 1378, 1380 [2017], lv denied 29 NY3d 916 [2017]).

Footnote 2: We deem any claims related to the portion of Supreme Court's order that partially granted the motion for reargument by further limiting the January 2019 subpoena to be abandoned, as plaintiff did not raise them upon this appeal (see CPLR 5701 [a] [2] [viii]; Matter of Urbach v Farrell, 229 AD2d 275, 277 n 2 [1997], appeal dismissed 90 NY2d 888 [1997], lv denied 90 NY2d 810 [1997]).

Footnote 3: As our determination is based upon the unusual circumstance of the intentional submission by plaintiff's former counsel of sworn affidavits disclosing otherwise-privileged communications, we reject plaintiff's argument that future litigation settlements may be hampered if counsel fear that disclosing their clients' positions during negotiations may waive the privilege.

Footnote 4: Supreme Court noted that plaintiff had expressly disavowed any intent to seek recusal. The court further observed that, before plaintiff served the September 2019 subpoena, it had twice warned plaintiff that to do so would be improper.

Footnote 5: A judge who is not presiding over an action or a proceeding may be found to be competent to testify about his or her observations in a previous matter (see Matter of Sheen, 145 Misc 2d at 921), and this is particularly true when the judge is the only available witness (see People v Perry, 127 Misc 2d 562, 565 [Sup Ct, New York County 1985], affd 148 AD2d 1017 [1989]).