James GORMLEY, Plaintiff,

v.

MAGICJACK VOCALTEC LTD., et al., Defendants.

16–CV–1869 (VM)

United States District Court, S.D. New York.

Signed November 14, 2016

Adam M. Apton, Nicholas Ian Porritt, Levi & Korsinsky LLP, Washington, DC, for Plaintiff.

Scott Michael Kessler, Joshua Richard Schonauer, Akerman LLP, New York, NY, Brian P. Miller, Samantha J. Kavanaugh, Akerman Senterfitt, Miami, FL, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Plaintiff James Gormley ("Gormley") brings this securities class action on behalf of himself and all others similarly situated against defendants magicJack VocalTec Ltd. ("magicJack"), Gerald Vento ("Vento"), and Jose Gordo ("Gordo," together

with Vento, "Individual Defendants") (collectively, "Defendants") alleging that: (1) Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Securities and Exchange Commission ("SEC") Rule 10b–5 ("Rule 10b–5") and (2) the Individual Defendants violated Section 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)"). (Dkt. No. 34.)

## I. BACKGROUND

### A. Facts and Procedural History

Gormley is an investor who owned shares of magicJack stock in November of 2013.[1] In November of 2013, on a conference call with analysts to discuss its third quarter results (the "3Q13 Conference Call"), magicJack, a cloud communications company, announced that projected revenues for the fourth quarter would be between $ 140 and $ 142 million, lower than previously anticipated. The announced projections on the 3Q13 Conference Call also differed from magicJack's internal projections of $ 143 million discussed in an email dated September 18, 2013 ("September 18 e-mail"). This decline in projected revenue caused Gormley, amongst other investors, to sell his shares of magicJack stock, resulting in the decline of the magicJack stock price from $ 12.51 per share in November 13, 2013 to $ 11.91 per share in December 30, 2013.

In March of 2014, magicJack announced in a press release ("the 4Q13 Press Release") that magicJack's fourth quarter revenues were approximately ten percent greater than the guidance magicJack gave investors during the 3Q13 Conference Call.

Gormley subsequently filed a complaint in this action. (Dkt. No. 1.) However, after letter correspondence between the parties regarding deficiencies in the complaint and Defendants' desire to file a motion to dismiss (See Dkt. No. 16, 28, 31, 32), Gormley requested leave to file an amended complaint, which the Court granted. (Dkt. No. 32.) Gormley subsequently filed his Amended Complaint. (Dkt. No. 34.)

### B. Defendants' Motion to Dismiss

By letter Defendants requested a pre-motion conference in anticipation of filing a motion to dismiss. (See Dkt. No. 35.) In so doing, Defendants attached the parties' pre-motion correspondence, including Defendants' letter dated September 8, 2016 ("September 8 letter"), and Gormley's response, dated September 14, 2016 ("September 14 letter"). (See id.) Defendants, in their September 8 letter, argue that the Amended Complaint fails to state a claim for relief under Section 10(b) and Rule 10b–5 because: (1) Gormley's claims are barred by the Private Securities Litigation Reform Act ("PSLRA") and the "bespeaks caution doctrine"; (2) the allegedly misleading statements were immaterial as a matter of law; (3) Gormley does not meet the heightened scienter requirements under the PSLRA; and (4) Gormley does not plead loss causation. (See id.) Gormley, in his September 14 letter, argues that: (1) the "bespeaks caution" doctrine is inapplicable because Defendants' cautionary language used only boilerplate; (2) the ten

---

1. The factual background below, except as otherwise noted, derives from the Amended Complaint ("Amended Complaint," see Dkt. No. 34) and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except where specifically quoted, no further citation will be made to the Amended Complaint or the documents referred to therein.

percent difference between magicJack's projected and actual fourth quarter revenue is material; (3) internal documents written by Defendants that are cited in the Amended Complaint sufficiently supporting a pleading of scienter; and (4) Gormley's causation allegations meet the plausibility standard under Federal Rule of Civil Procedure Rule 8. (See id.)

The Court subsequently held a pre-motion conference to discuss Defendants' potential motion to dismiss. (See Dkt. Minute Entry dated October 11, 2016.) The Court advised the parties that Defendants' arguments for dismissal were unpersuasive and that further briefing was unlikely to be productive. Defendants nonetheless requested further briefing on the record before the Court. The Court permitted the parties to submit an additional round of letter briefing regarding any arguments Defendants felt were not addressed during the telephone conference. (See id.)

In response to the Court's direction, Defendants submitted a letter to the court restating their arguments from their September 8 letter, which Gormley opposed. (Letters dated October 24 and 25, 2016, on file with chambers.)

The Court now construes the correspondence described above as a motion by Defendants to dismiss the Amended Complaint ("Motion"). For the reasons discussed below, Defendants' Motion is DENIED.

## II. DISCUSSION

### A. LEGAL STANDARD

■ To successfully bring a claim under Section 10(b) and Rule 10b–5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." Solow v. Citigroup, Inc., 507 Fed.Appx. 81, 82 (2d Cir. 2013). "The complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004); see also Kubin v. Miller, 801 F.Supp. 1101, 1117 (S.D.N.Y. 1992) ("In order to plead fraud with particularity, a plaintiff must allege the following: (1) the specific statements or omissions, (2) the aspect of the statement or omission that makes it false or misleading, (3) when the statement was made, (4) where the statement was made, and (5) which defendant is responsible for the statement or omission.").

■ To state a claim for securities fraud, the PSLRA imposes an additional requirement "that plaintiffs state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind. To satisfy this requirement, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." Rombach v. Chang, 355 F.3d at 176 (internal citations and quotation marks omitted). "Under this heightened pleading standard for scienter, a complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. In determining whether a strong inference exists, the allegations are not to be reviewed independently or in isolation, but the facts alleged must be taken collectively. The 'strong inference' standard is met when the inference of fraud is at least as likely as any non-culpable explanations offered." Slay-

ton v. Am. Exp. Co., 604 F.3d 758, 766 (2d Cir. 2010) (internal citations omitted).

## B. APPLICATION

### 1. The "Bespeaks Caution" Doctrine

■ The PSLRA safe harbor provision provides that a party "shall not be liable with respect to any forward looking statement ... if and to the extent that (A) the forward–looking statement is (i) identified as a forward looking statement, and is accompanied by meaningful cautionary statements ... or (ii) immaterial." 15 U.S.C. Section 77z–2(c). "The PSLRA includes several definitions of a forward–looking statement, including a statement containing a projection of ... income (including income loss), earnings (including earnings loss) per share, ... or other financial items and a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management ...." See Slayton v. Am. Exp. Co., 604 F.3d 758, 766–67 (2d Cir. 2010)(internal quotation marks omitted). The statements on the 3Q13 Conference Call projecting fourth quarter and full year revenue, using words like "expect," were clearly forward–looking statements that may be protected by the PSLRA safe harbor provision.

■ However, to be protected by the PSLRA safe harbor provision, the Defendants must also show that: (1) the statements were accompanied by cautionary language; or (2) the statements were immaterial; or (3) the plaintiff failed to prove the statements were made with actual knowledge that they were false or misleading. See Slayton v. Am. Exp. Co., 604 F.3d at 766. Defendants have not met this burden.

■ First, it is unclear whether Defendants' forward–looking statements included sufficient cautionary language. Defendants have to demonstrate cautionary language that was "not boilerplate and conveyed substantive information." Id. at 772. In evaluating whether cautionary language is adequate, courts must "identify the allegedly undisclosed risk and then read the allegedly fraudulent materials— including the cautionary language—to determine if a reasonable investor could have been misled into thinking that the risk that materialized and resulted in his loss did not actually exist." See In re Focus Media Holding Ltd. Litig., 701 F.Supp.2d 534, 541 (S.D.N.Y. 2010)(internal quotation marks omitted); Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 359 (2d Cir. 2002).

Defendants allege that the projections included cautionary language regarding the projections and directed all recipients of the projections to magicJack's April 2, 2013 Form 10–k ("Form 10–k"), which contained an additional warning that magicJack had "experienced, and may continue to experience, significant fluctuations in our quarterly results, which might make it difficult for investors to make reliable period–to–period comparisons and may contribute to volatility in the market price of our ordinary shares." (Dkt. No. 35.) However, neither the full transcript of the 3Q13 Conference Call nor the Form 10–k are in the record before the Court. Whether the language in the Form 10–k and the call itself were sufficient under the PLRSA is highly dependent on the actual language used on the call as well as previous calls. If the language has not changed over time to "reflect new information and new risks," the language "may be boilerplate." In re Salix Pharms., Ltd., No. 14–cv–8925, 2016 WL 1629341 at *12 (S.D.N.Y. April 22, 2016)(finding language that was "word-for-word" the same in each earnings call, along with unchanged language in 10–k

forms, to be insufficient). There is an insufficient record regarding Defendants' cautionary statements for the Court to determine that the statements were not merely boilerplate language.

 Second, the Court is persuaded that the statements at issue were material. "The test for whether a statement is materially misleading under Section 10(b) and 11 is whether the defendants' representations, taken together and in context, would have misled a reasonable investor." See Rombach v. Chang, 355 F.3d at 164. The "materiality of a misleading statement or omission for Section 10(b) purposes is a mixed question of law and fact, and a complaint may not be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." See Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010)(internal quotation marks omitted).

Here, the difference between magicJack's projected fourth quarter revenue on the 3Q13 Conference Call and the actual fourth quarter revenue was between approximately 2.7% and 7.9%. Defendants' emphasis on the difference in the projected and actual annual revenue is misplaced. Gormley clearly pleads in the Amended Complaint that it is the difference in the fourth quarter revenue, not the annual revenue, which caused the alleged harm. The difference in those projections may have misled a reasonable investor, satisfying Gormley's burden at this early stage of litigation.

Third, Gormley has alleged sufficient facts to indicate that Defendants had actual knowledge that the projections were false or misleading. The Amended Complaint references both the September 18 e-mail and "magicJack's revenue recognition practices [that] allowed magicjack to predict revenue with extraordinary accuracy" to allege that the Defendants had actual knowledge that magicJack would outperform the projection given on the 3Q13 Conference Call. (Dkt. No. 34.) Taken together, these facts indicate that the allegedly misleading statements were made with actual knowledge.

At this stage, it is unclear that the forward–looking statements at issue were accompanied by sufficient cautionary language, were immaterial, or were not made with actual knowledge of the false or misleading nature of the statements. Thus, the PSLRA's safe harbor provision is inapplicable.

### 2. Scienter

 Under the PSLRA's heightened pleading standard for scienter "a complaint will survive ... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged ... The strong inference standard is met when the inference of fraud is at least as likely as any non-culpable explanations offered." Slayton v. Am. Exp. Co., 604 F.3d at 766 (internal citations and quotation marks omitted).

 Gormley has pled sufficient facts to meet this heightened standard. First, the September 18 e-mail indicates that Defendants had some knowledge that the projection made on the 3Q13 Conference Call was lower than what the actual revenue total would be. (See Dkt. No. 34.) Second, magicJack had the capability to project earnings with accuracy due to magicJack's revenue recognition practices. (See id.) Third, the Individual Defendants owned significant amounts of magicJack

stock and had a financial stake in the performance of its stock. Fourth, by predicting that magicJack would perform worse than the Defendants knew it would, the Individual Defendants not only were able to profit from the increased value of the stock once the fourth quarter performance was announced, but also received praise for their leadership when magicJack exceeded expectations.

Taken collectively, these factual allegations establish an inference that fraud in this case is just as likely as all other non-culpable explanations. As such, Gormley has satisfied his burden with regards to pleading scienter.

### 3. Loss Causation

"Loss causation ... is the proximate causal link between the alleged misconduct and the plaintiff's economic harm. To that end, the plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." ATSI Commcns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 106–07 (2d Cir. 2007). The Second Circuit has held that "the subject of the fraudulent statement or omission" must be the "cause of the actual loss suffered, i.e. that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005)(internal citation and quotation marks omitted).

Pleading loss causation with particularity is not required as "a short and plain statement that provides the defendant with notice of the loss and its causal connection to the alleged misconduct is [ ] sufficient to assert loss causation." Sharette v. Credit Suisse Int'l, 127 F.Supp.3d 60, 80 (S.D.N.Y. 2015). The Amended Complaint clearly alleges that but for the De-

fendants' actions Gormley would not have sold his stock, and would have been able to benefit from the profits realized by magicJack after the announcement of its fourth quarter earnings. Gormley's pleading, therefore, sufficiently alleges loss causation.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants magicJack VocalTec Ltd. ("magicJack"), Gerald Vento ("Vento"), and Jose Gordo ("Gordo," together with Vento, "Individual Defendants") (collectively "Defendants") to dismiss the amended complaint (Dkt. No. 35.) is **DENIED.**

**SO ORDERED.**